1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  CRECITA WILLIAMS, et al.,

4                 Plaintiffs,

5          v.                              17 CV 6779 (WHP)

6  UNITED STATES OF AMERICA, et al.,

                                          Conference
7                 Defendants.

8  ------------------------------x

9                                         New York, N.Y.
                                          February 15, 2019
10                                        4:15 p.m.

11  Before:

12          HON. WILLIAM H. PAULEY III

13                                        District Judge

14

15

16

17
            APPEARANCES
18

19  ANDREW C. LAUFER
        Attorney for Plaintiffs
20

21  GEOFFREY S. BERMAN
        United States Attorney for the
22      Southern District of New York
        Attorney for Defendants
23  JENNIFER C. SIMON
        Assistant United States Attorney
24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

1                    (Case called; in the robing room)

2                    THE COURT:  This is a scheduling conference.  Would

3     counsel for the plaintiff give his appearance.

4                    MR. LAUFER:  Andrew Laufer for plaintiff Nicole

5     Morrison, for the estate of Roberto Grant.  Good afternoon,

6     your Honor.

7                    THE COURT:  Good afternoon, Mr. Laufer.  Counsel for

8     defendants?

9                    MS. SIMON:  Jennifer Simon from the United States

10    Attorney's office on behalf of the United States, Lee Ford, and

11    the Bureau of Prisons.

12                   THE COURT:  Good afternoon, Ms. Simon.  Fortunately,

13    we haven't started another government shutdown today.  Mr.

14    Laufer, what is the status of this matter?

15                   MR. LAUFER:  As I said in correspondence, we have

16    gotten all our ducks in a row with the Surrogate's Court.

17    Crecita Williams is the mother of the decedent.  She will be

18    playing an active role in this case.

19                   We filed an amended complaint during the last

20    shutdown.  I wasn't sure if that for some reason or another

21    would have stayed the deadlines that we have.  Regardless, I

22    tried to play it and safe and got it in there.  We named an

23    additional defendant, individual.  I have met and conferred

24    with counsel for the United States, and we got an address where

25    to serve this individual.  I think we have the name spelled

1   wrong though.

2          MS. SIMON:  To be clear, our office does not represent

3   any additional individual defendant at this time.

4          THE COURT:  I gathered that from your letter of

5   February 11th.

6          MS. SIMON:  Correct.  As I have already mentioned to

7   Mr. Laufer, there isn't a correctional officer by the name of

8   Kern or the spelling that he subsequently provided, Kerns.

9   K-E-R-N and K-E-R-N-S.  There is a correction officer with the

10  last name K-E-R-I-N-S, Kerins.  In an abundance of caution we

11  have provided Mr. Laufer with a method to serve him.

12         I do want to make it clear we are looking back at the

13  employment records of BOP because the name is a bit different

14  and it is not clear to me based on the allegations in the

15  complaint or the limited information we have received that we

16  are talking about the same person.  We will try to do that as

17  soon as possible.

18         THE COURT:  As an initial matter, were you able to

19  ascertain whether this gentleman Kerins was in fact on duty

20  during the times alleged in the complaint?

21         MS. SIMON:  Yes.  He works at MCC currently and did at

22  the time in 2015 I believe it was.  Based on the current

23  employee records, there isn't another name that is similar.

24  What we are not sure of is whether someone who worked there

25  back in 2015 with a name that is close or similar or different.

1       MR. LAUFER:  We have already provided service on this

2    individual at the address you gave me today.  You will probably

3    get notice of that by next week.  Number two, we have a

4    reasonable basis for naming this person.  I'm not playing darts

5    here.  We received some correspondence from a third party who

6    in our rule 26 -- when the time comes, we will disclose that to

7    you -- which is our basis for naming this individual we believe

8    to have been involved in some capacity with what occurred to

9    the decedent.

10       MS. SIMON:  If there is additional information,

11    whether it be a first name or physical description or more

12    detail, that may help us definitively.

13       MR. LAUFER:  If there was, I would give it to you.

14    All I have is the name, unfortunately.  I don't want to

15    elaborate anymore on who this person is yet until the time

16    comes.  But I do have a duty to disclose that to you, so you

17    will get it at the appropriate time.

18       THE COURT:  I think maybe I interrupted you.  You were

19    making your report.

20       MR. LAUFER:  Judge, you never interrupt me.

21       THE COURT:  Go ahead.

22       MR. LAUFER:  That is where we are currently at right

23    now.  I am hoping that counsel will forgo any rule 12 motion.

24    I think that is just kind of a waste of time on the Bivins and

25    the FTCA given the grittiness of the facts here.  I think I

1    meet Iqbal and Twombly.  I don't meet a heightened standard,

2    but I guess we can get into a disagreement on that in the

3    papers if need be.  I think it would be a waste of time.

4              I can't tell counsel what to do, but I would prefer

5    her to answer so we can get into discovery because we have a

6    dead person here.  My client, his mother, and his daughters

7    have waited long enough to get some justice here.  I think we

8    need to get the ball rolling in discovery as opposed to rule 12

9    motion play.

10             THE COURT:  What is the government's intention here?

11             MS. SIMON:  We will have to see once our office

12   represents any new defendant, but I do anticipate a motion to

13   dismiss here.  Particularly when you have individual

14   defendants, it is their right to file a motion to dismiss.

15   With the Bivins claim in particular, there just isn't a claim

16   alleged with one of the viable claims, a Bivins claim, and no

17   personal involvement that I see.  I will look at that time

18   further when we have rep authority from everyone else.

19             Like we said in our prior premotion conference letter

20   on the FTCA claims, similarly it does appear it fails to state

21   a claim.  With respect to the allegations, there is a

22   discretionary function exception for the claims alleged, and

23   there does not seem to be alleged any reasonably foreseeable

24   harm caused by these defendants.  There may be other grounds

25   for a motion to dismiss, but I expect that given this

1    complaint, except for the moving parts in terms of who the

2    plaintiffs and defendants are, is very similar to the prior one

3    in our prior pre-conference letter.

4             MR. LAUFER:  I fail to see a discretionary function

5    leading to a prisoner being beaten to death.  We have blunt

6    force trauma here.  I don't remotely see that coming into play.

7             THE COURT:  If the government wants to make a motion

8    here, they have a right to make a motion.

9             MR. LAUFER:  Certainly.

10            THE COURT:  What I would like to do is try to schedule

11   the motion practice and fix a discovery schedule in the case.

12            MR. LAUFER:  I don't know if it would serve to have

13   some premotion discovery.  I know we crossed this bridge the

14   last time and we had a standing issue at that point.  We don't

15   have a standing issue any longer.  It would be better if

16   counsel shows, so to speak, her cards in terms of what

17   information they have already garnered about the demise of the

18   decedent.  If that helps me formulate a second amended

19   complaint, which I would prefer not to do -- but if I have to,

20   I will certainly -- to satisfy her pleading needs under rule

21   12, maybe that is a road we should consider traveling as well.

22            MS. SIMON:  I think we have already had this argument.

23   Under the federal rules the failure to state a claim bars

24   discovery.  In other words, it's not appropriate at this stage,

25   in our opinion, to go down a discovery route when there is a

1   very strong argument for a motion to dismiss here.

2          I'm happy to set a briefing schedule for that, but I

3   think any discovery should wait until the motion to dismiss is

4   decided and see what, if any, defendants are still in the case

5   at that point rather than subject defendants who, in my

6   opinion, are very likely to be dismissed from the matter to

7   have discovery before that is resolved.

8          THE COURT:  When do you want to file a motion?

9          MS. SIMON:  If I understand correctly that this

10  individual was served today, that gives him 60 days to answer.

11  I believe they have started the rep authority process.

12  Hopefully, that will all line up such that we could set our

13  deadline to respond to the complaint on that date.

14         THE COURT:  We'll pick something a little beyond that.

15         MS. SIMON:  April 23rd, if I have done the math right,

16  would be the deadline.

17         THE COURT:  Why don't we make it April 30th.

18         MS. SIMON:  Thank you, your Honor.

19         THE COURT:  April 30th for the motion.  How much time

20  would you like to respond, Mr. Laufer?

21         MR. LAUFER:  That is giving you a little over 60.  So

22  I guess 30 days to respond.

23         THE COURT:  That's fine.  May 31 for opposition.

24         MS. SIMON:  May we have three weeks for reply, your

25  Honor?

1      THE COURT:  June 14.  I'll set this matter down for

2  oral argument Tuesday, July 9th, at 11 o'clock.  Between now

3  and that time, if the plaintiff wants to serve interrogatories

4  or document requests, that would be appropriate.  But no

5  depositions or other.

6      MS. SIMON:  Your Honor, for the same reasons we raised

7  in response to the earlier motion to compel, it seems to me

8  that there are pretty significant flaws in this complaint.

9  Several of the claims asserted simply fail to state a claim.

10  We would like a chance to file that motion and have it resolved

11  before.

12      THE COURT:  Someone was beaten to death in the prison.

13      MR. LAUFER:  In an open area, not some darkened

14  corner.

15      THE COURT:  I appreciate the government's position.

16  But now that we have a plaintiff with standing to sue, I don't

17  see why document discovery can't begin.  I'll supervise

18  discovery in the case.  If something gets out of control, I'm

19  sure you can bring it to my attention.

20      MR. LAUFER:  Not only that, your Honor.  I feel

21  counsel in a way is asking me to prove my case in my compliant.

22  I don't need to do that.  I just need to state a cause of

23  action.

24      THE COURT:  We will deal with the legal issues on the

25  motion.

1    MS. SIMON:  There is no allegation that either of the

2    individual defendants was personally involved, and the ME's

3    report that was incorporated by reference actually said that

4    the cause of death was undetermined.  So, while the

5    circumstances are very tragic, I think the defendant's right to

6    insist that there be a claim stated before discovery should be

7    taken into account here.

8    MR. LAUFER:  With regard to Lee Floyd, he told my

9    clients that the decedent OD'd on K2 specifically.  The

10   toxicology report was negative.  There was nothing in my

11   client's system.  Throughout the entire autopsy it says blunt

12   force trauma.  I don't know how you got blunt force trauma

13   other than being beaten to death.  My client didn't beat

14   himself to death, someone else did, and it was in the dorm

15   area.

16   With regard to this particular individual that we have

17   just recently named, there were complaints that this particular

18   individual had against my client, supposedly claiming that he

19   was on K2 all the time.  This was specifically what I have been

20   told.

21   Again, under the federal rules, even looking at Iqbal

22   and Twombly and the whole analysis in its most defense-oriented

23   light, I state a cause of action, a short statement.  I don't

24   need to prove my allegations.  I do that at trial on the Bivins

25   and on the FTCA.  So I think this is a huge waste of time.  But

1    obviously they have a right to make their motion.

2            THE COURT:  I believe that limited document discovery

3    should be able to proceed.  Therefore, I am going to include

4    that in the scheduling order.

5            MR. LAUFER:  Thank you, your Honor.

6            THE COURT:  The case has been pending for quite some

7    time and the incident happened well before the time the case

8    was filed, which raises other issues.  I assume they will be

9    addressed in the motion.

10           MS. SIMON:  Yes, your Honor.

11           THE COURT:  Is there anything else that we can

12   accomplish today?

13           MS. SIMON:  I don't think so.  Thank you.

14           MR. LAUFER:  That's it, your Honor.  Thank you.

15           THE COURT:  Thank you.  Have a good afternoon.

16           (Adjourned)

17

18

19

20

21

22

23

24

25