UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

NICOLE MORRISON, *as Administrator for the Estate of Roberto Grant*,

:
:
:
:
:
:
:
:
:
:
:
:
:

17cv6779

Plaintiff,

OPINION & ORDER

-against-

UNITED STATES OF AMERICA, *et al.*,

Defendants.

------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

    Plaintiff Nicole Morrison is the administrator of the estate of Roberto Grant, an individual who died while in custody at the Metropolitan Correctional Center ("MCC") in lower Manhattan. She brings this federal civil rights action against the United States of America, the Federal Bureau of Prisons ("BOP"), and Correctional Officers Lee Plourde and Michael Kearins[1] (together, "Defendants"). Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

    The allegations in the Amended Complaint are presumed true on this motion. Morrison is Grant's ex-wife and the mother of Grant's two children. (Am. Compl., ECF No. 34 ("Compl."), at 1.) On August 28, 2014, Grant pled guilty to conspiring to commit Hobbs Act robbery. Morrison alleges that Grant was beaten to death at MCC while awaiting sentencing.

---

[1]   In her Amended Complaint, Morrison purports to name Correctional Officer "Kern." However, no individual with that surname is employed by BOP at MCC. The Government assumes for the sake of this motion that Morrison intended to refer to Correctional Officer Michael Kearins "due only to the rough similarity in last name." (See Defs.' Mem. of Law in Supp. of their Mot. to Dismiss, ECF No. 42, at 1 n.1.)

(Compl. ¶¶ 8–9.) Prior to his death, Grant, a 35-year-old man, expressed concerns to Morrison and his mother, Crecita Williams, that he was being harassed and physically threatened by a correctional officer. (Compl., at 1–2.)

On May 19, 2015, Grant's body was discovered in a dormitory. (Compl., at 1.) When Morrison and Williams went to MCC after his death, Plourde informed them that Grant died of a drug overdose and had not been physically harmed. (Compl., at 1.) Although the Office of the Chief Medical Examiner of the City of New York conducted an autopsy in May 2015, no report was issued until January 10, 2017. (Compl., at 2.) That autopsy report described numerous contusions, hemorrhages, and lacerations on Grant's head, neck, and torso, suggesting blunt force trauma. (Compl., at 2–3.) The accompanying toxicology report did not show the presence of drugs or alcohol. (Compl., at 2.)

Morrison brings claims under: (1) Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971); and (2) the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680.

## DISCUSSION

I. Standard

Under Rule 12(b)(1), a case is "properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). Moreover, a court may "consider materials extrinsic to the complaint" when subject matter

jurisdiction is challenged. Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of proving "the existence of subject matter jurisdiction by a preponderance of the evidence." Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although the plausibility standard is "not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. The court must draw all reasonable inferences in the plaintiff's favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).

II.     Bivens Claims

In Bivens, the Supreme Court recognized an implied cause of action for money damages to compensate plaintiffs for certain constitutional violations at the hands of federal officers in their individual capacities. Ziglar v. Abbasi, 137 S. Ct. 1843, 1851–52 (2017); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). The Supreme Court has confirmed the availability of this remedy in three narrow circumstances—unreasonable searches and seizures in violation of the Fourth Amendment, Bivens, 403 U.S. at 397, gender discrimination in violation of the Fifth Amendment Due Process Clause, Davis v. Passman, 442 U.S. 228, 248–49 (1979), and inadequate medical treatment in a prison in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, Carlson v. Green, 446 U.S. 14, 19 (1980). "Because the doctrine of respondeat superior does not apply in Bivens actions, a plaintiff must

3

allege that the individual defendant was personally involved in the constitutional violation." Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006).

Recently, the Supreme Court reiterated that expanding the Bivens remedy is a "'disfavored' judicial activity." Abbasi, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675). Accordingly, when entertaining a Bivens claim, a court must first decide whether the claim encompasses a cause of action that has been previously recognized, or whether the claim presents a "new context." Abbasi, 137 S. Ct. at 1859. "If the case is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court, then the context is new." Abbasi, 137 S. Ct. at 1859. Further, if the context is new, a Bivens remedy will not be available if there are "special factors counselling hesitation in the absence of affirmative action by Congress." Abbasi, 137 S. Ct. at 1857 (citation and quotation marks omitted). "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy." Abbasi, 137 S. Ct. at 1858. And "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Abbasi, 137 S. Ct. at 1858.

To the extent that the Amended Complaint alleges Bivens claims against the United States, the BOP, and individual defendants acting in their official capacities, these claims are dismissed for lack of subject matter jurisdiction. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (noting that sovereign immunity prevents plaintiffs from bringing Bivens actions against the United States, federal agencies, and individual federal defendants in their official capacities). Indeed, Morrison concedes this point in her opposition brief. (See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, ECF No. 46, at 8.)

4

Turning to the claims brought against the defendants in their individual capacities, Morrison is imprecise on which constitutional protections Plourde and Kearins violated. However, this Court construes Morrison's Amended Complaint to allege (1) a cover-up, and (2) Eighth Amendment violations under Bivens.

A.   Cover-Up

Morrison alleges in conclusory fashion that Plourde "deliberately attempted to 'cover-up' the facts and circumstances surrounding [Grant's] death." (Compl. ¶ 26.) But the only fact Morrison pleads to support that conclusion is that Plourde's statements to Morrison and Williams about the cause of Grant's death are contradicted by the autopsy and toxicology reports. (Compl., at 1–2.) That is not enough. See Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) ("[A] plaintiff in a Bivens action is required to allege facts indicating that the defendants were personally involved in the claimed constitutional violation."); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

Moreover, Morrison does not explain how this alleged "cover-up" violated the Constitution.[2] In any event, Morrison's cover-up claim differs meaningfully from previous Bivens cases, making the context "new." See Abbasi, 137 S. Ct. at 1859; Ochoa v. Bratton, 2017 WL 5900552, at *7 (S.D.N.Y. Nov. 28, 2017). Morrison's cover-up claim boils down to an allegation that Plourde deliberately made an untrue statement about Grant's death—a claim not

---

[2]   In an attempt to create a Bivens remedy, Morrison cites a district court decision allowing a Bivens claim to proceed where the federal defendants covered up experimental drug testing by the U.S. Army that deprived the plaintiff of her property interest in a potential FTCA cause of action. Barrett v. United States, 622 F. Supp. 574, 591 (S.D.N.Y. 1985). However, the court did not recognize a Bivens claim for every kind of cover-up scenario. And unlike the plaintiff in Barrett, Morrison cannot allege that she was deprived of a property interest because she is pursuing an FTCA claim in this lawsuit.

5

even envisioned, let alone encompassed, by any of the Supreme Court's Bivens cases. See Abbasi, 137 S. Ct. at 1860 (finding that the allegations in Abbasi "bear little resemblance to the three Bivens claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma") (citations omitted)).

Because this context is "new," this Court must consider whether there are any "special factors counseling hesitation" in expanding Bivens "in the absence of affirmative action by Congress." Abbasi, 137 S. Ct. at 1857; see also Davila v. Lang, 343 F. Supp. 3d 254, 274 (S.D.N.Y. 2018) ("[A] court begins with the premise that the Judiciary should not readily extend a Bivens remedy to new claims, and before a court does so, it should consider a number of factors to determine whether 'Congress would want the Judiciary to entertain a damages suit in a given case.'" (quoting Abbasi, 137 S. Ct. at 1858)). The Government notes that there are likely "sound reasons to think Congress might doubt the efficacy or necessity" of creating a new Bivens remedy against a federal prison official alleged to have covered-up an inmate's death. Abbasi, 137 S. Ct. at 1858. Here, this is especially true because there are no allegations that Plourde intentionally misled Morrison or knew the statement he made was false. Since the threshold for concluding that a special factor counsels hesitation "is remarkably low," Arar, 585 F.3d at 574, this Court is reluctant to weigh in on the internal management and operations of BOP, see Abbasi, 137 S. Ct. at 1860 (noting that a Bivens action is not "a proper vehicle for altering an entity's policy" (quoting Malesko, 534 U.S. at 74)). Additionally, since Morrison is pursuing an FTCA claim, this alternative remedial structure "alone may limit the power of the Judiciary to infer a new Bivens cause of action." Abbasi, 137 S. Ct. at 1858; see also Abdoulaye

6

v. Cimaglia, 2018 WL 1890488, at *6–7 (S.D.N.Y. Mar. 30, 2018) (finding that the existence of the FTCA as a potential remedy for a prisoner alleging Fifth and Eighth Amendment violations counseled against creating a Bivens remedy); Morgan v. Shivers, 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018) (noting that while the FTCA and Bivens were once considered "parallel, complementary causes of action," the reasoning of Abbasi indicates that the FTCA is an alternative remedial structure counseling hesitation in extending Bivens (citation omitted)). Thus, Morrison's cover-up claim under Bivens is dismissed.

B. Eighth Amendment Violations

Morrison's Eighth Amendment claim appears premised on a refusal to provide medical care to Grant. See Carlson, 446 U.S. at 18–23 (extending Bivens to cover a failure to provide adequate medical care to a prisoner in violation of the Eighth Amendment). Specifically, Morrison states that Defendants were "deliberately indifferent to the health, safety, and welfare of [Grant], in violation of the Eighth Amendment" because they were deliberately indifferent in supervising Grant and his assailants, failed to properly and timely respond to his emergency medical condition, and departed from accepted standards of reasonable care, thus "contributing to and resulting in his wrongful death." (Compl. ¶ 28.)

At the outset, this Court notes that Grant pled guilty and was awaiting sentencing when he died at MCC. While the constitutional status of convicted, but not sentenced, defendants remains an unanswered question in this circuit, district courts apply the Eighth Amendment, not the Fifth or Fourteenth Amendments, to individuals in Grant's circumstance. See, e.g., Stewart v. Schiro, 2015 WL 1854198, at *11 (E.D.N.Y. Apr. 22, 2015) (agreeing with the "weight of authority" that persons who have been convicted, but not sentenced, do not have the same protections as pretrial detainees for alleged constitutional deprivations); Maldonado v.

7

Kinlock, 2012 WL 3597049, at *5 (S.D.N.Y. Aug. 21, 2012) (concluding that convicted plaintiff awaiting sentencing could not be classified as a pretrial detainee for Due Process Clause analysis); Jeanty v. County of Orange, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005) ("[P]laintiff's excessive force claim, which arose after he was convicted but before he was sentenced, is to be analyzed under the Eighth Amendment."); see also Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir. 1990) ("We see no reason to treat incarcerated persons whose guilt has been adjudicated formally but who await sentencing like pretrial detainees . . . . The critical juncture is conviction, either after trial or, as here, by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated." (citing Bell v. Wolfish, 441 U.S. 520, 534–44 (1979); Ingraham v. Wright, 430 U.S. 651, 664 (1977))).

"An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). There are two prongs to this claim: (1) an "objective" prong demonstrating that the alleged medical need is "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists"; and (2) a "subjective" prong, showing that the official acted with a "sufficiently culpable state of mind." Hill, 657 F.3d at 122 (citations and quotation marks omitted). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Further, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw [that] inference [himself]." Farmer, 511 U.S. at 837.

8

Here, while the Amended Complaint alleges that Defendants were deliberately indifferent to the health and safety of Grant, Morrison does not plausibly allege that either Kearins or Plourde was individually involved in the incident that purportedly led to Grant's death.  See Ganek v. Liebowitz, 874 F.3d 73, 92 (2d Cir. 2017) (explaining that a plaintiff bringing a Bivens claim must allege the personal involvement of each individual defendant).  Morrison alleges no facts suggesting that Kearins or Plourde knew of Grant's beating when it occurred or failed to act at that time.  Thus, the "subjective" prong is not satisfied.

Additionally, there is no indication that either Kearins or Plourde "intentionally delayed access to medical care when the inmate was in extreme pain and ha[d] made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment."  Roundtree v. City of New York, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) (citation and quotation marks omitted).  And while Morrison alleges that Grant was being harassed and physically threatened by Kearins prior to his death, these claims alone, without more, are too ethereal to connect Kearins to Grant's death.  See Adekoya v. Holder, 751 F. Supp. 2d 688, 697 (S.D.N.Y. 2010) (dismissing deliberate indifference claim because the "pleading does not specify that any particular defendant knew of and disregarded an excessive risk to [plaintiff's] health or safety, and were otherwise involved in the constitutional and statutory violations he assert[ed]").

Defendants' motion to dismiss Plaintiff's claims against Plourde and Kearins under Bivens is therefore granted for failure to state a claim.

III.   FTCA Claims

The FTCA waives the federal government's sovereign immunity to tort suits for money damages for:

9

> [P]ersonal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The Amended Complaint recites a list of negligent actions that may have caused Grant's death, such as: (1) the Government's failure to provide supervision for Grant; (2) the Government's failure to come to his aid, either while he was being beaten or afterwards; (3) the Government's failure to implement appropriate security protocols; and (4) the Government's negligent hiring and training of its employees. (See Compl. ¶ 21.)

As a preliminary matter, the Government contends that it is the only proper defendant in an FTCA suit, and for that reason alone, the FTCA claim against BOP and the individual defendants should be dismissed. See Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ("[A] claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA."). Plaintiff does not appear to contest this point, and therefore the FTCA claims against BOP and the individual defendants are dismissed for lack of subject matter jurisdiction.

A. <u>Discretionary Function Exception</u>

"The discretionary function exception precludes claims [under the FTCA] based on decisions at the policy or planning level," as well as those based on "day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." Fazi v. United States, 935 F.2d 535, 537–38 (2d Cir. 1991). For this exception to apply, "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or

choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (quoting United States v. Gaubert, 499 U.S. 315, 322–23 (1991)). If the alleged actions fall within this exception, the claim fails for lack of subject matter jurisdiction. See Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013) (per curiam). Thus, the federal government will not be liable under the FTCA if the "discretionary function" exception applies. See 28 U.S.C. § 2680(a); Gaubert, 499 U.S. at 322; Berkovitz v. United States, 486 U.S. 531, 536 (1988).

As to the first prong, the Supreme Court has noted that, "[t]he requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Gaubert, 499 U.S. at 322 (citation and quotation marks omitted). Under the second prong, the "focus of the inquiry is . . . on the nature of the actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." Gaubert, 499 U.S. at 324. Nonetheless, this presumption may be rebutted by a showing that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324–25.

In that regard, the Second Circuit recognizes a "negligent guard" carve-out to the discretionary function exception. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006). A court retains subject matter jurisdiction where the injury is alleged to have resulted from an official's "lazy or careless failure to perform his or her discretionary duties."

11

Coulthurst, 214 F.3d at 110.  Thus, negligent conduct that "neither involve[s] an element of judgment or choice within the meaning of Gaubert nor [is] grounded in considerations of governmental policy," falls outside the discretionary function exception.  Coulthurst, 214 F.3d at 109.

Here, the Government argues that the discretionary function exception applies to the supervision of inmates at MCC and bars Morrison's claims.  Looking to the first prong of the discretionary function analysis, the BOP is charged with, among other things, "the management and regulation of all Federal penal and correctional institutions" and responsibility to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses."  18 U.S.C. § 4042(a).  Prison officials are afforded discretion in deciding how best to execute this duty of care.  See Rhodes v. Chapman, 452 U.S. 337, 350 n.14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administration."); see also Hooker v. United States, 2013 WL 3491089, at *6 (S.D.N.Y. July 12, 2013) ("The absence of specific guidelines of appropriate conduct by BOP officials in administering these duties, therefore, leaves judgment or choice to the BOP officials." (citation omitted)).  This broad statute is not prescriptive; rather, it confers an element of "judgment or choice" on the BOP.  Gaubert, 499 U.S. at 322.  Accordingly, the first prong is satisfied.

As to the second prong, many of Morrison's allegations do not rebut the "strong presumption" afforded the BOP because the regulation at issue "allows the employee discretion." Gaubert, 499 U.S. at 324.  For example, Morrison alleges that Defendants negligently operated the premises, negligently hired their employees, and negligently enacted security policies and procedures at MCC.  But security, supervision, and hiring decisions at prisons—namely, what policies to enact and how to enforce them—generally fall within the discretionary function

12

exception.  See, e.g., Hooker, 2013 WL 3491089, at *6; Winters v. United States, 2013 WL 1627950, at *5 (S.D.N.Y. Apr. 16, 2013); Cuoco v. U.S. Bureau of Prisons, 2003 WL 22203727, at *6 (S.D.N.Y. Sept. 22, 2003).

However, the Government avoids meaningful engagement with the "negligent guard" carve-out explained in Coulthurst and Triestman.  Instead, the Government argues that Morrison alleges no facts suggesting that the injury was borne out of laziness or inattentiveness.  But some of Morrison's allegations—specifically, that Defendants "negligently provid[ed] supervision and security" related to Grant's health, "negligently deviat[ed] from the proper standard of care by failing to properly secure and supervise [Grant] and his assailants," and "fail[ed] to provide immediate assistance to [Grant] due to . . . negligent conduct"—suggest that BOP employees were negligent in enforcing BOP's own security procedures.  (Compl. ¶ 21.)  And this type of negligence is not protected by the discretionary function exception.  See, e.g., Triestman, 470 F.3d at 476 (holding that district court erroneously dismissed case where allegations fairly suggested that defendants were negligent in their enforcement of a security policy); Coulthurst, 214 F.3d at 109 (allowing FTCA claim to proceed where "complaint was broad enough to cover" negligence that fell outside out of the discretionary function exception, such as allegations that prison officials had negligently failed to inspect prison equipment); see also Kwitek v. U.S. Postal Serv., 694 F. Supp. 2d 219, 227 (W.D.N.Y. 2010) (applying Coulthurst reasoning outside pro se context).

Moreover, the alleged acts or omissions are "unrelated to any plausible policy objectives."  Coulthurst, 214 F.3d at 111.  Death of a federal prisoner by blunt force trauma while in custody of the BOP represents an epic failure to provide a safe and secure environment.  In short, the negligent conduct is beyond the pale of the discretionary function exception and

13

discovery is warranted. See Triestman, 470 F.3d at 476 ("expressing no ultimate view" as to whether the claim could withstand summary judgment but allowing it to proceed past the motion to dismiss stage because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim[]" (citation omitted)); see also Farley v. United States, 2012 WL 713399, at *7 (W.D.N.Y. Mar. 5, 2012) (finding a need for factual development of the record to determine whether the negligent guard theory applies); Sledge v. United States, 723 F. Supp. 2d 87, 98 (D.D.C. 2010) (determining that plaintiff's allegations of an assault in a "closely supervised and tightly regulated prison environment" warranted discovery to assess BOP employees' conduct). Therefore, the discretionary function exception does not apply, and this Court has subject matter jurisdiction over Morrison's claim.

B. Negligence

The "FTCA requires the court to apply the substantive law of the place where the event occurred." Castro, 34 F.3d at 110. Since the incident occurred at MCC, this Court looks to New York negligence law to determine whether Morrison has stated a claim. Under New York law, a plaintiff must show that there was (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty by the defendant, and (3) injury sustained by the plaintiff substantially as a result of the breach. Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002). In New York, a correctional facility "owes a duty of care to safeguard inmates, even from attacks by fellow inmates." Sanchez v. State, 784 N.E.2d 675, 678 (N.Y. 2002). The scope of this duty, however, is "limited to risks of harm that are reasonably foreseeable." Sanchez, 784 N.E.2d at 678. Foreseeability is defined by "actual or constructive notice." Sanchez, 784 N.E.2d at 680.

Here, the Government contends that Morrison cannot sustain a negligence claim

because the Amended Complaint does not allege that the risk of harm to Grant was "reasonably foreseeable." However, the BOP owes inmates a statutory duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses." 18 U.S.C. § 4042(a); Hooker, 2013 WL 3491089, at *6 ("[T]he BOP must exercise ordinary diligence or reasonable care to keep prisoners safe and free from harm." (citation and quotation marks omitted)). As discussed above, Morrison alleges that a correctional officer harassed and physically threatened Grant prior to his death. (See Compl., at 2.) This harassment was witnessed by at least one other inmate. (See Compl., at 2.) Such intimidation suggests reasonably foreseeable harm to Grant within the scope of the BOP's duty of care. Further, "the precise manner in which the harm occurred need not be foreseeable"—rather, it must be "within the class of reasonably foreseeable hazards that the duty exists to prevent." Sanchez, 784 N.E.2d at 678. And "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010).

When combining the risks to Grant posed by the correctional officer's alleged conduct with the allegations surrounding his death, Morrison plausibly alleges a breach of the BOP's duty of care to protect Grant from harm.[3] While this Court acknowledges that "unremitting surveillance in all circumstances" is not required, Sanchez, 784 N.E.2d at 681, Grant's death occurred in a dormitory setting presumably subject to round-the-clock observation by correctional officers. Accordingly, Morrison has adequately pled a negligence claim.

## CONCLUSION

Roberto Grant was beaten to death in an MCC dormitory. Contrary to the Government's assertion, this is not a case involving an "unadorned, the-defendant-unlawfully-

---

[3] The parties spend little time addressing the other elements of a negligence claim—a breach of the duty of care that caused the ultimate injury. Accordingly, this Court does not analyze those elements in detail.

15

harmed-me accusation." Iqbal, 556 U.S. at 678.  Rather, this tragedy had to stem from a cascade of failures and seems like a case where the matter speaks for itself.

Recently, the death of a high-profile defendant reinvigorated public scrutiny of MCC.  The unexplained circumstances surrounding Mr. Grant's death raise troubling questions about the BOP's oversight of individuals remanded to its custody.  Mr. Grant's relatives—and the public—have an interest in learning what happened.

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.  The Bivens claims are dismissed against all Defendants.  The Federal Tort Claims Act claims are dismissed as to the Bureau of Prisons and the individual defendants, but may proceed against the United States.

Dated:  October 18, 2019
        New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.