

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 22, 2021

**By ECF**

Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Morrison v. United States*, No. 17 Civ. 6779 (WHP)

Dear Judge Pauley:

      This Office represents the United States in the above-referenced action. We write respectfully to request a pre-motion conference regarding the Government's anticipated motion for summary judgment. In addition, the Government respectfully requests that the upcoming deadline for a proposed joint pre-trial order, on April 30, 2021, and related deadlines, be extended until 30 days after the Court's ruling on the anticipated motion for summary judgment. Plaintiff does not consent to this request.

      As this Court is aware, Plaintiff Nicole Morrison, the administrator of the estate of decedent Roberto Grant, asserts a claim under the Federal Tort Claims Act ("FTCA") against the Government. She alleges that Defendant's negligence caused Mr. Grant's death while he was an inmate at the Metropolitan Correction Center ("MCC") located in New York City. *See* Am. Compl. ¶¶ 12-24.[1] Plaintiff does not allege, nor has she put forward any evidence, that any BOP employee was personally involved in Mr. Grant's death. Rather, Plaintiff alleges that Mr. Grant died from blunt force trauma while he was being held in a multi-inmate cell at MCC. *See id.* at 1. More specifically, the Amended Complaint alleged that Mr. Grant "suffer[ed] severe injury and [was] beaten to death" by unidentified "assailants." Am. Compl. ¶ 21. Among other things, Plaintiff alleged "negligence of the Defendants . . . in negligently providing supervision and security . . . resulting . . . in [Mr. Grant's] severe injuries and death; in negligently allowing [Mr. Grant's injury and death]." Am. Compl. ¶ 21. However, because Plaintiff cannot demonstrate a causal link between any alleged negligence by Defendant and Mr. Grant's death, the Government is entitled to summary judgment.

      Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As relevant here, "when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *CILP Assocs., L.P. v.*

---

[1] Plaintiff's second cause of action, brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), was dismissed by the Court. *See* Dkt. No. 52.

*Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). To avoid summary judgment, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Id.*

Here, the Government is entitled to summary judgment in light of the lack of evidence that any breach by the Defendant caused Mr. Grant's death. As this Court previously held, the "'FTCA requires the court to apply the substantive law of the place where the event occurred,'" and accordingly "this Court looks to New York negligence law to determine whether Morrison has stated a claim." Dkt. No. 52 at 14 (quoting Castro, 34 F.3d at 110. "Under New York law, a plaintiff must show that there was (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty by the defendant, and (3) injury sustained by the plaintiff substantially as a result of the breach." *Id.* (citing Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002)). Moreover, although "a correctional facility 'owes a duty of care to safeguard inmates, even from attacks by fellow inmates,' . . . [t]he scope of this duty, . . . is 'limited to risks of harm that are reasonably foreseeable.'" *Id.* (quoting *Sanchez v. State*, 784 N.E.2d 675, 678 (N.Y. 2002)). "Foreseeability is defined by actual or constructive notice." *Id.*

In the instant case, the undisputed material facts show that, at approximately 11:40 p.m. on May 18, 2015, inmates in a cell with Mr. Grant at the MCC notified BOP officers that Mr. Grant was unresponsive. When subsequently interviewed by the FBI and when speaking to family members, those inmates stated that Mr. Grant had been chatting with other inmates before suddenly collapsing. After being called to the cell by inmates, BOP officers found Mr. Grant on his bunk bed unresponsive. BOP staff then commenced CPR and continued CPR until the arrival of EMTs, who took over CPR and transferred Mr. Grant to a nearby hospital. He was declared dead by an ER doctor at 12:33 a.m. on May 19, 2015. A medical examiner concluded the cause of death was undetermined.

In discovery, Plaintiff has elicited no testimony from fact witnesses, nor any documentary evidence, that refutes the above facts. Instead, Plaintiff has offered the expert opinion of a pathologist, Dr. Hua, who asserts that "[i]n the absence of his fatal and acute intoxication or fatal natural disease, [Mr. Grant]'s cause of death should be listed as inflicted and/or homicidal neck compression." In support of this conclusion, Dr. Hua points to internal neck injuries, as well as the petechial hemorrhages present in Mr. Grant's eyes and mouth. Dr. Hua admits that he was not provided with, nor did he review or consider, the statements of eyewitnesses to Mr. Grant's behavior in the moments leading up to his death.

First, as a threshold matter, to the extent that Dr. Hua's opinion is based on a review of the record that excludes witness statements, the Court should deem his testimony inadmissible. Expert testimony is admissible when: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert's testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Here, Dr. Hua acknowledges that his report, as well as his subsequent deposition testimony, failed to consider witness statements, despite his assertion that it is necessary to "always look in the context of . . . [the] case" to

Page 3

determine cause of death, and that witness statements are part of that context.  This failure amounts to a "serious flaw [] in reasoning or methodology" that warrants exclusion of Dr. Hua's testimony.  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009).  By contrast, Defendant's expert pathologist, Dr. Gill, evaluated Plaintiff's autopsy in light of all of the circumstances surrounding his death.

Second, even if Dr. Hua's testimony is admissible, the record still reflects a lack of evidence that any breach of duty by the Defendant was the proximate cause of Mr. Grant's death.  In particular, as detailed by the Government's expert Dr. Gill, a person whose death is caused by strangulation, does not have an intervening "lucid" interval, in which they are observed to be casually conversing, between neck compression and death.[2]  Plaintiff's expert does not, and cannot, dispute this.  The inmates who observed Mr. Grant before he fell unconscious on May 18, 2015, provided consistent statements asserting that he had such a lucid interval; he was talking to other inmates immediately before becoming unconscious.  Nor did any eyewitnesses to Mr. Grant's collapse assert that he suffered strangulation or any type of neck compression at the time.  Plaintiff has elicited no testimony or documents in discovery that would put this fact in dispute.  Tellingly, Plaintiff's expert Dr. Hua also testified at his deposition that, without additional testing, he could not rule out fatal natural disease or an overdose as the cause of death.

We thank the Court for its consideration of this matter.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By: _____
JENNIFER C. SIMON
LUCAS ISSACHAROFF
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2746/2737

---

[2] Dr. Gill opined that, Mr. Grant's heart disease, including hypertensive and atherosclerotic cardiovascular disease with enlargement of the heart, narrowing of a major coronary artery, and kidney involvement, with or without a contribution of an undetected synthetic cannabinoid, caused his death.  Moreover, although no synthetic cannabinoids were detected in the toxicology testing, in 2014 there were over 170 different known synthetic cannabinoids; Mr. Grant's body was only tested for 32 of them.  Dr. Gill further opined that the injuries to Mr. Grant's neck, airway, and mouth, as well as the petechiae, are consistent with CPR; it is undisputed that Mr. Grant underwent a prolonged resuscitation attempt by multiple providers, some of whom were inexperienced. Plaintiff's and Defendant's experts agree that the apparent bruising on Mr. Grant's face was not bruising at all, but was instead subcutaneous emphysema, a condition in which air is trapped under the surface of the skin causing swelling, in this instance caused by an improperly positioned intubation tube used during CPR.