# Law Office of Andrew C. Laufer, PLLC

264 West 40th Street, Suite 604
New York, NY 10018
(212) 422-1020 - phone
(212) 422-1069 - facsimile
E-Mail: alaufer@lauferlawgroup.com

April 26, 2021

Via ECF
Honorable William H. Pauley
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   Williams, et al v. U.S., et al., No. 17 Civ.  6779 (WHP)

Dear Honorable Judge Pauley:

Our office represents the Plaintiff in the referenced matter.  This letter is submitted in opposition to defendant's request for a pre-motion conference regarding their anticipated motion for summary judgment and an adjournment of the deadline for the parties to submit their Joint Pretrial Order, on April 30th, 2021, and related deadlines.

During the course of discovery, evidence has been revealed which clearly demonstrates negligence on the part of the defendants in relation to the death of Roberto Grant.  Therefore, a motion by the government for dismissal would present a fruitless endeavor and will further delay plaintiff's, and decedents next of kin, entitlement to justice for the death of her former husband and father of their two children.

"To prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In deciding such a motion, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Giano v. Senkowski, 54 F.3d 1050, 1052 (2d Cir.1995). Hemphill v. Schott, 141 F.3d 412, 415 (2d Cir.1998).  See also McKelvie v. Cooper 190 F.3d 58 (1999.

In the present instance, plaintiff has sufficient material facts which precludes summary judgment for defendants on the basis of negligent oversight, supervision, and security of the decedent's dorm area. Defense witness Officer Dionysia Georgopoulos, along with Officer Michael Kearins, were on duty and posted to the housing area where the decedent was murdered.  They were also first responders. Georgopoulos testified she was told by one of the inmates in Mr. Grants dorm that he was choked to death by another inmate during a game of horseplay.  She further testified that she felt Mr. Grant was murdered.  Officer Georgopoulos rendition of the facts is much more credible

than the contradictory statements made by inmates from Mr. Grant's housing area.

Additionally, defense witnesses Captain Michael Craig Ward and Lieutenant Patrick DeLaney, both supervisors of Officers Georgopoulos and Kearins, testified that patrol rounds by their Correctional Officers must be conducted every 30-40 minutes within housing areas. According to plaintiff's prison conditions expert, Tim Gravette, a retired FBOP deputy warden with over 20 years experience working for the defendants, this would require correctional officers to patrol at least 16 times during an 8 hour tour. Officer Georgopoulos testified that she and Officer Kearins only patrolled a few times during their tour at the time Mr. Grant was murdered. This demonstrates a clear violation of directives issued by their supervising officers.

Defendants failed to rebut any of the findings Mr. Gravette demonstrated within his report, either during his testimony or through a defense expert which they failed to retain.

The negligent guard theory has long been held as a vector of liability in FTCA claims against the defendants. Defendants, as here, are subject to liability where "…negligence of the officer on duty (occurs) by failing to patrol or respond diligently…. that the officer on duty when the incident occurred failed to patrol or respond diligently to an emergency situation out of laziness or inattentiveness." See See Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir.2000) (See Triestman v Federal Bureau of Prisons, 470 F.3d 471 (2006).

In Enigwe v. Zenk, No. 03–CV–854, 2007 WL 2713849, at *9 (E.D.N.Y. Sept. 14, 2007) the Court when finding liability upon defendants "(noting that "certain negligent acts, such as those borne out of laziness, hastiness, or inattentiveness, fall so far outside the range of appropriate judgment that they can no longer be viewed as an exercise of discretion"). See Hartman v. Holder, 2009 WL 792185 (2009).

In Caraballo v. United States, 830 F.2d 19, 22 (2d Cir.1987) (discretion over whether and how to implement beach patrol did not shield government from actions challenging negligent execution of patrol).

Defendants also erroneous characterize the reports and testimony of both the plaintiff and defendant's forensic pathologists in order to bolster their chances at dismissal.

"For expert testimony to be admissible, district court must determine that it is reliable; list of factors that, although not constituting a definitive checklist or test, court might consider in evaluating whether a proffered expert opinion has the required indicia of scientific reliability include whether a theory or technique had been and could be tested, whether it had been subjected to peer review, its error rate, and its degree of acceptance within the relevant scientific community." Fed. R. Evid. 702 See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588–89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). See In re Mirena IUD Products Liability Litigation 169 F.Supp.3d 396 (2016)

"[W]hen an *413 expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir.2002); see Joiner, 522 U.S. at 146, 118 S.Ct. 512 ("[N]othing in either Daubert or the Federal

Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")." See also Mirena, id.

Unlike Dr. Hua, defense expert Dr. Gill failed to review all of Mr. Grants autopsy records. The New York City Medical Examiner's Office produced over 300 photographs of the decedents autopsy. Dr. Hua review each and every one of them. Dr. Gill admits in his report he only reviewed approximately 50. Further, Dr. Jennifer Hammers, the pathologist who conducted the autopsy of Mr. Grant did not review any of the contradictory inmate witness statements. Some reflected that Mr. Grant was lying down, sitting down, and standing when he fell to the floor. Dr. Gill also failed to review Officer Georgopoulos's testimony reflecting Mr. Grant was indeed murdered.

Dr. Gill has a history of presenting misleading testimony and said testimony was a factor in at least one case which resulted in the reversal of a jury verdict. See Greco v Orthopedic and Sports Medicine Clinic, PC, 35 N.E.3d 1265 (2015).

An example of his misleading statements in this matter are reflected within his report. He refers to the blunt force trauma that Mr. Grant suffered as "minor." The Dr. Hammers never refers to such trauma as minor in her autopsy report. During Dr. Gills deposition he begrudgingly admits this fact among others which are detrimental to his findings.

Defendants also attempt to have Dr. Hua prove a negative in the testing of Mr. Grant for substances such as K2. Mr. Grant was tested 3 times for such substances. All results were negative as reflected in the NYC examiners report and records. The defendants seem to believe that testing, which may or may not exist, would suddenly result in a positive medical finding of K2 within Mr. Grants system nearly six years after his death.

At a minimum, the clash of expert opinions in this matter further precludes a finding for summary judgment for the defendants. An unnecessary dispositive motion will only achieve the wasting of time and valuable judicial resources and ultimately delay resolution of this matter.

Further, the plaintiff has already served her first draft of the parties Joint Pretrial Order upon defendants. The parties have engaged in the drafting of this document which is currently due on April 30, 2021.

Therefore, it is respectfully requested that the Court deny defendants request for a pre-motion conference, direct the parties to continue drafting the Joint Pretrial Order, and for other relief the Court deems just and proper.

Thank you for your time and attention to this matter.

Respectfully submitted,

Andrew C. Laufer

Enc.:

ACL/
Cc:
    Jennifer Simon – Via ECF
    Lucas Issacharoff, Esq. – Via ECF