UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE MORRISON, as Administrator for the Estate of Roberto Grant, and NICOLE MORRISON, as Mother and Legal Guardian for the Property of AG and SG, Decedent's Minor Children,

                              Plaintiffs,

      v.

UNITED STATES OF AMERICA, *et al.*,

                              Defendants.

17 Civ. 6779 (WHP)

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT UNITED STATES OF AMERICA

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2746

JENNIFER C. SIMON
LUCAS ISSACHAROFF
Assistant United States Attorneys
    *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................................1

FACTUAL BACKGROUND .....................................................................................................................2

    A.   Death of Roberto Grant on May 19, 2015......................................................................2

    B.   Autopsy Findings ............................................................................................................3

ARGUMENT .............................................................................................................................................6

    A.       Legal Framework............................................................................................................6

    B.       The United States Is Entitled to Summary Judgment Because the Plaintiff Has Failed to Create a Genuine Dispute of Fact as to Whether Mr. Grant's Death Was Caused by Any Breach of a Duty Owed by the Government to Mr. Grant ............8

    C.       In the Alternative, the Testimony of Plaintiff's Expert Dr. Hua Should Be Deemed Inadmissible....................................................................................................11

CONCLUSION.........................................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Aegis Ins. Servs., Inc., v. 7 World Trade Co., L.P.*,
    737 F.3d 166 (2d Cir. 2013) .................................................................................................. 8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................ 6

*Anemone v. Metro. Transp. Auth.*,
    629 F.3d 97 (2d Cir. 2011) ...................................................................................................... 6

*Bee v. Novartis Pharm. Corp.*,
    18 F. Supp. 3d 268 (E.D.N.Y. 2014) .................................................................................... 12

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................................................................ 1

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*,
    735 F.3d 114 (2d Cir. 2013) .................................................................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ........................................................................................................ 11, 12

*Ferreira v. City of Binghamton*,
    975 F.3d 255 (2d Cir. 2020) .................................................................................................... 8

*Garcia v. Dutchess Cnty.*,
    43 F. Supp. 3d 281 (S.D.N.Y. 2014) ...................................................................................... 7

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136, (1997)) ........................................................................................................... 12

*Giuffra v. Vantage Travel Serv., Inc.*,
    No. 13-CV-6880, 2015 U.S. Dist. LEXIS 70331 (S.D.N.Y. June 1, 2015) ........................... 8

*Goenaga v. March of Dimes Birth Defects Found.*,
    51 F.3d 14 (2d Cir. 1995) ........................................................................................................ 6

*Hain v. Jamison*,
    28 N.Y.3d 524 (2016) ............................................................................................................. 8

*Heslin v. Cnty. of Greene*,
    14 N.Y.3d 67 (2010) ............................................................................................................... 7

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009) .................................................................................. 12

*Lombard v. Booz-Allen & Hamilton, Inc.*,
   280 F.3d 209 (2d Cir. 2002) ................................................................................................ 8

*Mathirampuzha v. Potter*,
   548 F.3d 70 (2d Cir. 2008) .................................................................................................. 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................................ 7

*Nimely v. City of N.Y.*,
   414 F.3d 381 (2d Cir. 2005); ............................................................................................ 12

*Qin Chen v. U.S.*,
   494 Fed. App'x 108 (2d Cir. 2012) ..................................................................................... 8

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) ................................................................................................ 11

*Syms v. Olin Corp.*,
   408 F.3d 95 (2d Cir. 2005) .................................................................................................. 7

*United States v. Orleans*,
   425 U.S. 807 (1976) ............................................................................................................ 7

 **Statutes**

28 U.S.C. § 1346 .......................................................................................................................... 7

N.Y. EPTL § 5-4.1 ....................................................................................................................... 7

N.Y. EPTL § 5-4.3 ....................................................................................................................... 7

Defendant United States of America, by its attorney, Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Plaintiff Nicole Morrison, as the administrator of the estate of decedent Roberto Grant and legal guardian of Mr. Grant's children, brings a claim under the Federal Tort Claims Act ("FTCA") arising from the death of Mr. Grant while he was an inmate at the Metropolitan Correction Center ("MCC") located in New York City. *See* Amended Complaint, Dkt. No. 34 ("Am. Compl.") ¶¶ 12-24.[1] The Amended Complaint alleges that Mr. Grant died from blunt force trauma while he was being held in a multi-inmate cell at MCC. *See id.* at 1. Plaintiff alleges that Mr. Grant was beaten by unidentified "assailants" and asserts, among other things, that the United States "negligently provid[ed] supervision and security . . . resulting . . . in [Mr. Grant's] severe injuries and death." *Id.* ¶ 21.

However, in discovery, Plaintiff has failed to raise a triable issue of fact as to whether any negligence or other wrongful act by the Government caused Mr. Grant's death. Not only does Plaintiff's own expert pathologist concede that he cannot rule out natural causes or acute intoxication as the cause of Mr. Grant's death, none of the inmates who were present at the time Mr. Grant fell unconscious, nor any of the correctional officers subsequently called to the scene,

---

[1] The Amended Complaint also asserted a claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), naming the Federal Bureau of Prisons ("BOP") and two BOP employees in their individual capacity as defendants. *See* Dkt. No. 34. By its October 18, 2019, Opinion and Order, the Court dismissed the *Bivens* claim and dismissed the individual defendants and BOP from the action. *See* Dkt. No. 52. The only remaining claim is the FTCA claim against the United States. *Id.*

1

observed any indication that an altercation of any kind took place. Moreover, witness statements establish that Mr. Grant was talking with other inmates in the moments before he collapsed, an undisputed, critical fact that Plaintiff's expert failed to consider and that renders his opinion unreliable.

Plaintiff has accordingly failed to raise a triable issue of fact as to whether any wrongful act or omission by the Government was the cause of Mr. Grant's death, and the Government is entitled to summary judgment.

## FACTUAL BACKGROUND

A. **Death of Roberto Grant on May 19, 2015**

On May 18, 2015, at approximately 11:40 p.m. – after lockdown – inmates at MCC unit 11-South, Tier 12, notified Officers Dionysia Georgopoulos and Michael Kearins that an inmate was non-responsive. Officers Georgopoulos and Kearins called for a medical emergency and staff responded, finding Mr. Grant unresponsive. *See* July 2, 2021 Declaration of Jennifer Simon ("Simon Decl."), Exh. G. Bureau of Prisons ("BOP") staff administered CPR until the arrival of EMTs who took over resuscitation efforts. *Id.* EMTs intubated Mr. Grant while he was still at MCC. *See* Simon Decl., Exh. F, Records of New York Presbyterian Hospital, May 9, 2015, Disposition Note, at 8. Mr. Grant was transferred to New York-Presbyterian Lower Manhattan Hospital, arriving in the Emergency Room at 12:25 a.m. *Id.* at 4. He was pronounced dead at 12:33 a.m. on May 19, 2015. *Id.* at 11.

Following Grant's death, BOP referred the matter to the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") for investigation. The FBI conducted interviews of the occupants of Unit 11-South, who were present when Mr. Grant fell unconscious, and others. *See* July 1, 2021 Declaration of Jason Randazzo ("Randazzo Decl.") ¶ 3. Eyewitness statements from inmates who saw Mr. Grant fall unconscious establish that Mr. Grant was on his

bunk talking with other inmates immediately prior to his collapse. Randazzo Decl., Exhs. A, B; July 1, 2021 Declaration of Paul Scuzzarella ("Scuzzarella Decl."), Exh. A. Mr. Grant then got up from the bunk, slumped over and fell to the floor unconscious. *Id.* One inmate saw that Mr. Grant grabbed his chest as he fell. Scuzzarella Decl., Exh. A. Although Mr. Grant was still breathing immediately after falling to the floor, he remained unresponsive, urinated on himself, and was heard to make snoring noises. Randazzo Decl., Exh. A.

After Mr. Grant fell to the floor, other inmates became aware of his condition and approached Mr. Grant. They too observed that Mr. Grant was unresponsive, was having difficulty breathing and making snoring noises, and was wet with urine. Randazzo Decl., Exhs. C, D, E. None of the witnesses to Mr. Grant's collapse observed any altercation or other disturbance prior to Mr. Grant's collapse. On the contrary, the witness statements consistently assert that Mr. Grant was talking with other inmates in the moments leading up to his collapse, *see* Randazzo Decl., Exhs. A, B, F, G; Scuzzarella Decl., Exh. A, and deny that it would have been possible for someone to assault Mr. Grant without them knowing, *see* Randazzo Decl., Exhs. A, C, D, F, G.

Inmates housed with Mr. Grant also stated that Mr. Grant was known to smoke synthetic marijuana (K-2), and he had smoked K-2 on May 18, 2015 in the time period leading up to his collapse. Randazzo Decl., Exhs. A, B, G.

**B.   Autopsy Findings**

On May 19, 2015, an autopsy was performed at the Office of Chief Medical Examiner of the City of New York ("OCME") by Medical Examiner Dr. Jennifer Hammers. *See* Simon Decl. Exh. A, December 28, 2016 Report of Autopsy ("OCME Rpt."). The report of autopsy, dated December 28, 2016, identified various injuries suffered by Mr. Grant and also observed that Mr. Grant had suffered from hypertensive and atherosclerotic cardiovascular disease with

3

enlargement of the heart, narrowing of a major coronary artery, and kidney involvement. *Id.* at 1. However, the medical examiner concluded that the manner and cause of Mr. Grant's death could not be determined. *Id.* at 7.

Plaintiff expert Dr. Zhongxue Hua and the Government's expert Dr. James Gill agree that certain of the blunt force injuries were likely the result of efforts to resuscitate Mr. Grant, efforts which included the use of chest compressions and an endotracheal tube. For instance, there was an internal hemorrhage on Mr. Grant's right lung bronchus. *Id.* at 1. An endotracheal tube that is pushed in too far can cause damage to the main bronchi. *See* July 1, 2021 Declaration of James Gill ("Gill Decl."), Exh. A, Report ("Gill Rpt.") at 3; Simon Decl., Exh. D, Excerpts from the Transcript of the Mar. 26, 2021, Deposition of Dr. Zhongxue Hua ("Hua Tr.") 41:21-42:18. Similarly, it is undisputed that the apparent bruising on Mr. Grant's face was not bruising at all, but was instead subcutaneous emphysema, a condition in which air is trapped under the surface of the skin causing swelling. OCME Rpt. at 1; Gill Rpt. at 3; Hua Tr. 54:12-56:5. Subcutaneous emphysema is a known, well-documented side effect of CPR. Hua Tr. 54:12-56:5. The contusion found on Mr. Grant's lip, as well as the excoriations to the oral mucosa are also common side effects of intubation. Hua Tr. 44:11-24, 47:19-23.

Dr. Hammers also found internal hemorrhages in the neck muscles, vessels, and trachea. OCME Rpt. at 1, 4-5. Having considered the witness statements and other evidence – including the lack of any eyewitness statements relating to neck compression, the prolonged resuscitation efforts, and Mr. Grant's lucid interval immediately prior to losing consciousness – the

Government's expert Dr. Gill concluded that the injuries to the neck and airway findings of the autopsy were also caused by the resuscitation efforts. *See* Gill Rpt. at 3.[2]

On the other hand, Plaintiff's expert, who did not review the witness statements, submitted a "conditional conclusion," Hua Tr. 129:4-18, opining that "[i]n the absence of his fatal and acute intoxication or fatal natural disease, [Mr. Grant's] cause of death should be listed as inflicted and/or homicidal neck compression[.]" Simon Decl. Exh. C, Mar. 11, 2020 Report of Dr. Hua ("Hua Rpt.") at 2. In his deposition, Dr. Hua explained that his opinion is a "conditional" one because he could not rule out death by acute intoxication, nor could he rule out death by fatal natural disease. Hua Tr. 129:2-18. Particularly with respect to the latter, Dr. Hua testified that he would need to submit sections of the heart for additional testing in order to rule out fatal natural disease. Hua Tr. 132:2-20.

In addition to the above, the autopsy found other injuries on Mr. Grant's body, including internal hemorrhages on the back of the head, left forearm, right elbow, shoulder, and chest, to varying degrees. OCME Rpt. 1, 6. However, neither the medical examiner nor the parties' experts identified any of these injuries as contributing to Mr. Grant's death. OCME Rpt.; Gill Rpt.; Hua Rpt. There were also no external injuries to Mr. Grant's skin, such as abrasions, contusions or lacerations to the skin. OCME Rpt. at 6. The autopsy also noted a deep laceration to the left lung, OCME Rpt. at 1, but it is undisputed that the laceration was most likely an artifact of the autopsy itself, *i.e.* caused when the lung was removed during the autopsy. Hua Tr. 63:14-64:4.

---

[2] Similarly, with respect to the petechia (small hemorrhages) found in and around Mr. Grant's eyes, airways, and surrounding tissues, Dr. Gill concluded these findings are explained by the prolonged attempted cardiovascular resuscitation that Mr. Grant underwent. Gill Rpt. at 3.

Prior to his death Mr. Grant also suffered from hypertensive cardiovascular disease with cardiac hypertrophy (enlargement of the heart), and from coronary artery atherosclerosis. OCME Rpt. at 2, 6, which in Mr. Grant presented as the narrowing of the critical left main coronary artery. *Id.*; Gill Rpt. at 2.

In conjunction with the autopsy, a toxicology report was performed. Simon Decl., Exh. B. No synthetic cannabinoids were detected in the toxicology testing. *Id.* However, it is undisputed that, in 2014 there were over 170 different known synthetic cannabinoids. Gill Rpt. at 3. The lab conducting the toxicology testing in this case tested for only 32 of those. *Id.*

## ARGUMENT

**A.     Legal Framework**

    **1.     Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if "the evidence is such that a reasonable [fact-finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing whether a genuine dispute exists, the Court must "constru[e] all the evidence in the light most favorable to the non-movant and draw[] all reasonable inferences in that party's favor." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011). However, "when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To avoid summary judgment, "the nonmoving party must come forward with

6

admissible evidence sufficient to raise a genuine issue of fact for trial." *Id.*; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2. Federal Tort Claims Act

The FTCA provides a limited waiver of sovereign immunity for certain suits arising from injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [her] office or employment." 28 U.S.C. § 1346(b)(1). Specifically, the FTCA makes "the [f]ederal [g]overnment liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976); *Mathirampuzha v. Potter*, 548 F.3d 70, 80 (2d Cir. 2008).

The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* In other words, "[t]he statute looks to state substantive law to determine whether the plaintiff has a valid cause of action." *Syms v. Olin Corp.*, 408 F.3d 95, 107 (2d Cir. 2005); *see also Makarova*, 201 F.3d at 114 ("Under the FTCA, courts are bound to apply the law of the state . . . where the accident occurred."). Here, Plaintiff's claim against the United States is barred because she fails to state a claim under New York state law.

Under New York law, "a wrongful death action belongs to the decedent's distributees and is designed to compensate the distributees themselves for their pecuniary losses as a result of the wrongful act." *Heslin v. Cnty. of Greene*, 14 N.Y.3d 67, 76 (2010) (citing N.Y. EPTL § 5-4.3). To establish a claim for wrongful death, plaintiff must establish the "wrongful act, neglect or default which caused the decedent's death **against** a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. EPTL § 5-4.1; *see also Garcia v. Dutchess Cnty.*, 43 F. Supp. 3d 281, 298-99 (S.D.N.Y. 2014).

7

To establish negligence under New York law, "a plaintiff must show that there was (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty by the defendant, and (3) injury sustained by the plaintiff substantially as a result of the breach." *Qin Chen v. U.S.*, 494 Fed. App'x 108, 109 (2d Cir. 2012) (summary order) (citing *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)). "If one of these essential elements is absent from plaintiffs' case, as a matter of law, then the rest of the plaintiffs' case is immaterial, and summary judgment for the defendants is appropriate." *Giuffra v. Vantage Travel Serv., Inc.*, No. 13-CV-6880, 2015 U.S. Dist. LEXIS 70331, at *4 (S.D.N.Y. June 1, 2015) (internal quotations omitted); *see also Aegis Ins. Servs., Inc., v. 7 World Trade Co., L.P.*, 737 F.3d 166, 178 (2d Cir. 2013) ("Once a duty is established, to prevail [the plaintiff] must prove a breach of that duty, and that the breach was the cause of [the plaintiff's] injuries.").

**B.  The United States Is Entitled to Summary Judgment Because the Plaintiff Has Failed to Create a Genuine Dispute of Fact as to Whether Mr. Grant's Death Was Caused by Any Breach of a Duty Owed by the Government to Mr. Grant**

The Government is entitled to summary judgment because Plaintiff fails to raise a triable issue of fact as to whether a breach of a duty, or any other wrongful act by BOP, caused Mr. Grant's death. More specifically, even were Plaintiff to establish some alleged negligence, which the Government does not concede, "'[e]vidence of negligence is not enough by itself to establish liability,' for it also must be proved that the negligence was a proximate, or legal, cause of the event that produced the harm sustained by the plaintiff." *Hain v. Jamison*, 28 N.Y.3d 524, 528 (2016) (quoting *Sheehan v. City of New York*, 40 N.Y.2d 496, 501 (1976)). A defendant's negligence "qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Ferreira v. City of Binghamton*, 975 F.3d 255, 274 (2d Cir. 2020) (quoting *Hain*, 28 N.Y.3d at 529-30).

Here, Plaintiff alleges that Mr. Grant "suffer[ed] severe injury and [was] beaten to death" by unidentified "assailants" while being held in a multi-inmate cell. Am. Compl. ¶ 21. Among other things, Plaintiff alleged "negligence of the Defendants . . . in negligently providing supervision and security . . . resulting . . . in [Mr. Grant's] severe injuries and death; in negligently allowing [Mr. Grant's injury and death]." Am. Compl. ¶ 21. As noted above, in discovery, Plaintiff produced the expert report of Dr. Hua who asserts that, while he cannot rule natural causes or acute intoxication as the cause of death, "[i]n the absence of . . . fatal and acute intoxication or fatal natural disease, [Mr. Grant's] cause of death should be listed as inflicted and/or homicidal neck compression[.]" Hua Rpt. at 2; *see also* Hua Tr. 129:4-18, 132:2-20.

However, Plaintiff's own allegations in the complaint and the conditional opinion of Dr. Hua are insufficient to raise a triable issue of fact as to whether Mr. Grant died as the result of neck compression or any other injury attributable to alleged negligence on the part of BOP, and thus Plaintiff has failed to raise a triable issue of fact as to whether Mr. Grant's death was caused by any act or omission by BOP. None of the statements by eyewitnesses support Plaintiff's assertion that Mr. Grant suffered some sort of neck compression, and even Plaintiff's expert acknowledges that he cannot rule either natural causes or acute intoxication out as the cause of Mr. Grant's death.[3]

As to the other potential causes of Mr. Grant's death, including fatal natural disease and acute intoxication which Dr. Hua does not rule out, Plaintiff has not identified any mechanism by which Plaintiff's sudden collapse could have been prevented by greater BOP diligence or any

---

[3] Although Plaintiff notes in her April 26, 2021, pre-motion conference letter that Officer Georgopoulos testified in her deposition that she believed that Mr. Grant had been murdered, *see* Dkt. No. 74, it is undisputed that Georgopoulos was not present in the unit when Mr. Grant fell unconscious and was not an eyewitness to his collapse.

9

defect in the medical attention provided to Mr. Grant after his collapse. Plaintiff's own prison conditions expert, Roy Timothy Gravette, acknowledged that, if Mr. Grant died under non-homicide circumstances, he would "have to reconsider [his] opinions" regarding BOP's responsibility for Grant's death. Simon Decl., Exh. E, Excerpt from the Transcript of the February 24, 2021, Deposition of Roy Timothy Gravette, 59:10-11; *see also id.* at 61:10.

Moreover, Dr. Hua does not, and cannot, dispute that a person whose death is caused by strangulation, would not have an intervening "lucid" interval, in which they are observed to be casually conversing, between neck compression and death. Gill Rpt. at 2. That is to say, if neck compression were sufficient to cause death in an individual, the individual would not experience an interval of time between the compression of their neck and death in which they are able to engage in a normal conversation. *Id.* But Dr. Hua failed to consider witness statements establishing that Mr. Grant had such a lucid interval, and was observed to be chatting with other inmates, immediately prior to falling unconscious, eliminating neck compression as a possible cause of death. These eyewitness statements, which Dr. Hua acknowledged should ordinarily be considered by a medical examiner, *see* Hua Tr. 85:19-86:3, contradict even Dr. Hua's conditional opinion on Mr. Grant's cause of death.[4]

---

[4] Although the Court need not specifically find that Mr. Grant's death was the result of natural causes or acute intoxication in order to concluded that Plaintiff has failed to raise a triable issue of fact and grant the Government summary judgment, the witness statements, autopsy report and other documentary evidence support the conclusion reached by the Government's expert that Mr. Grant did in fact die of natural causes, with or without the contribution of an undetected synthetic cannabinoid. *See* Gill Rpt. As set forth in the expert report of Dr. Gill, Mr. Grant had hypertensive and atherosclerotic cardiovascular disease with enlargement of the heart, narrowing of a major coronary artery, and kidney involvement. *Id.* at 2. These diseases are common causes of sudden death, and enlargement of the heart puts a person at risk for a fatal arrythmia. *Id.* In the case of Mr. Grant, the location of the atherosclerotic stenosis, namely in the left main coronary artery, increased this risk; the left main coronary artery is also known as the "widow-maker" because it branches into two major arteries that supply the left ventricle with blood and oxygen. *Id.* The circumstances described by the witnesses to Mr. Grant's collapse, *i.e.* that he

Thus, not only does Dr. Hua concede that he cannot rule out other causes of death, his qualified assertion that Mr. Grant died of neck compression is belied by the evidence that Dr. Hua failed to consider. Plaintiff has accordingly failed to raise a triable issue of fact as to whether any wrongful act or omission by the United States was the cause of Mr. Grant's death.

C. **In the Alternative, the Testimony of Plaintiff's Expert Dr. Hua Should Be Deemed Inadmissible**

Expert testimony is admissible when: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert's testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). In determining expert admissibility, district courts act as gatekeepers against unreliable expert opinion. *Id*.

Moreover, under *Daubert*, "the district court functions as the gatekeeper for expert testimony," and "[t]he court performs the same role at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). "[I]f the expert testimony is excluded as inadmissible under the

---

was talking normally before falling unconscious to the floor, are also consistent with a sudden cardiac arrest. *Id*. Even the observation by multiple witnesses that Mr. Grant was "snoring" after collapsing is consistent with cardiac arrest; after the heart stops, it is common to have terminal seizure activity and reflexive attempts to continue breathing, so-called "agonal" breathing which are often described as snoring. *Id*. As detailed above and in Dr. Gill's report, the injuries to Mr. Grant's neck airway and mouth were consistent with the prolonged CPR performed on Mr. Grant by multiple providers, some of whom were not experienced EMTs. *Id*. at 3. Finally, as noted above, although no synthetic cannabinoids were detected in the relevant toxicology testing, there were over 170 different known synthetic cannabinoids in 2014; testing in this case was conducted only for 32 of those. *Id*.

framework articulated in Daubert and its progeny, the summary judgment determination is made by the district court on a record that does not contain that evidence. . . . even if precluding the expert testimony would be outcome determinative." *Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 299 (E.D.N.Y. 2014) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997)).

Here, Dr. Hua acknowledges that his report, as well as his subsequent deposition testimony, failed to consider witness statements, *see* Hua Rpt. at 1; Hua Tr. 65:17-20, despite his acknowledge that it is necessary to "always look in the context of . . . [the] case" to determine cause of death, and that witness statements are part of that context. Hua Tr. 85:19-86:3. In this respect, Plaintiff fails to demonstrate that Dr. Hua's opinion "is based upon reliable data and methodology," as required by Fed. R. Evid. 702. *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005); *see also Gen. Elec. Co.*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). This "serious flaw [] in reasoning or methodology," warrants exclusion of Dr. Hua's testimony. *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009).

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the United States or, in the alternative, deem the testimony of Dr. Hua inadmissible.

Dated: New York, New York
July 2, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney of the
Southern District of New York

By: _____
JENNIFER C. SIMON
LUCAS ISSACHAROFF
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2746/2737