UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE MORRISON, as Administrator for the
Estate of Roberto Grant, and NICOLE
MORRISON, as Mother and Legal Guardian for the
Property of AG and SG, Decedent's Minor
Children,

                            Plaintiffs,                          17 Civ. 6779 (WHP)

            v.

UNITED STATES OF AMERICA,

                            Defendant.

## **DECLARATION OF JASON RANDAZZO**

In accordance with the provisions of 28 U.S.C. § 1746, I, Jason Randazzo, hereby declare

as follows with respect to the above-captioned case:

1.      I am a former Special Agent for the Federal Bureau of Investigation.  I served in

this position from 1990 until my retirement in 2018.

2.      The statements in this declaration are based on my personal knowledge and

review of records provided to me by the Government in my former capacity as a Special

Agent.

3.      I was the special agent assigned to the investigation of the death of Roberto Grant

at the Metropolitan Correctional Center, 150 Park Row, New York, New York ("MCC").

In connection with that investigation, I participated in a number of interviews of guards

and inmates along with prosecutors from the United States Attorneys Office for the

Southern District of New York.

4.      As a Special Agent, it was my regular practice to prepare memoranda of interviews conducted in the course of my duties using form FD-302. The attached exhibits were created and maintained during the ordinary course of my duties as a Special Agent, at the time of the interview recorded therein or within a reasonable amount of time thereafter, when I had actual knowledge of the interview recorded.

5.      Attached hereto as Exhibit A is a true and correct copy of the 302 I drafted in connection with the June 18, 2015 interview of ██████. The 302 accords with my recollection of the interview and I incorporate it by reference as if fully set forth herein.

6.      Attached hereto as Exhibit B is a true and correct copy of the 302 I drafted in connection with the March 10, 2017 interview of ██████. The 302 accords with my recollection of the interview and I incorporate it by reference as if fully set forth herein.

7.      Attached hereto as Exhibit C is a true and correct copy of the 302 I drafted in connection with the June 18, 2015 interview of ██████. The 302 accords with my recollection of the interview and I incorporate it by reference as if fully set forth herein.

8.      Attached hereto as Exhibit D is a true and correct copy of the 302 I drafted in connection with the June 18, 2015 interview of ██████. The 302 accords with my recollection of the interview and I incorporate it by reference as if fully set forth herein.

9.      Attached hereto as Exhibit E is a true and correct copy of the 302 I drafted in connection with the June 18, 2015 interview of ██████. The 302 accords with my recollection of the interview and I incorporate it by reference as if fully set forth herein.

10.     Attached hereto as Exhibit F is a true and correct copy of the 302 I drafted in connection with the July 21, 2015 interview of ▮▮▮▮▮ at the MCC.  The 302 accords with my recollection of the interview and I incorporate it by reference as if fully set forth herein.

11.     Attached hereto as Exhibit G is a true and correct copy of the 302 I drafted in connection with the June 18, 2015 interview of ▮▮▮▮▮.  The 302 accords with my recollection of the interview and I incorporate it by reference as if fully set forth herein.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: Raleigh, North Carolina
       July 1, 2021

_____
JASON RANDAZZO

Exhibit A

FD-302 (Rev. 5-8-10)                              - 1 of 2 -                    **OFFICIAL RECORD**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    06/16/2015

███████████████  Inmate, Metropolitan Correctional Center (MCC), 150
Park Row, New York, New York, was advised of the official identity of the
interviewing agents and the nature of the interview. He was advised of his
constitutional rights, as per Federal Bureau of Investigation form FD-395,
"Advise of Rights," which he verbally acknowledged understanding his rights
and agreed to answer questions strictly regarding the nature of the
interview. He then furnished the following information:

On May 18, 2015, ████████ who was incarcerated in the dormitory
of Unit 11 South of the MCC, was near the bed of an inmate he identified as
ROBERTO GRANT talking to him and another inmate he identified as
████████ went to the bathroom before returning to GRANT who, as he was lying
on the bed, stated that he was not going to take a shower that day. As
████████ stated to him that he was dirty, GRANT sat up, leaned over, slumped
and crumpled forward and slowly fell to the floor. ████████ who knew GRANT
since October 2014 on the unit and described them as close and considered
GRANT his older brother, kicked his leg and stated,"Stop playin'!" As he
called over another inmate he identified as ████████ he heard GRANT make a
snoring noise and saw that he was sweating profusely. He was still
breathing at the time but was drooling. When they turned him over he
noticed that his pants were wet with urine. He got a rag and began to wash
his face with it. He also wet him while pulling off his sweater.

The correctional officers (CO) responded to the unit and dropped
GRANT from about waist height as the COs tried to lift him to put him on
the stretcher and he banged his head on the floor. CO KEARINS was near his
head when he tried to pick him up. The inmates then got on KEARINS as they
were then moved away from the scene into the gym area.

GRANT smoked a substance identified as K-2 that day but not at
the time of the incident.

No one was in a position to assault him in any way and he does
not have any ongoing disputes with anyone on the unit. GRANT was highly
respected on the unit and he would be protected by the other inmates there,
especially ██████ who GRANT lobbied the unit counselor to transfer him to
the unit. ██████ has been upset since the incident.

---

Investigation on  06/11/2015   at  New York, New York, United States (In Person)

File #  ████████████

                                                        Date drafted   06/12/2015

by  Jason Randazzo, MCCAFFREY DANIEL X JR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

SUBJECT TO PROTECTIVE ORDER                           US_03470

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of ████████████ , On  06/11/2015 , Page  2 of 2

SUBJECT TO PROTECTIVE ORDER

Exhibit B

FD-302 (Rev. 5-8-10)

- 1 of 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    03/10/2017

████████████ , former inmate, Metropolitan Correctional Center
(MCC), 150 Park Row, New York, New York, (347)520-0772, was advised of the
official identity of the interviewing agent and the nature of the
interview.  He then furnished the following information:

████████ stated that for approximately twenty minutes he was in the
company of ROBERTO GRANT and was about five to six feet away from him
before GRANT sat down on the floor and then lied there in a prone
position.  He had smoked a cigarette with GRANT, who had also smoked K-2
during the time.  He attempted to alert GRANT that he was going to have
another cigarette when GRANT did not respond to him or the other inmates.
The time that they picked GRANT up from the floor to put him on the bed was
the only time that anyone had made any contact with him.  At no time had
anyone assaulted, strangled or in any way harmed GRANT.

He described GRANT as a "well-respected dude."  ████████ is now
attending school to become a drug counselor.

Investigation on  02/27/2017  at  New York, New York, United States  (Phone)

File #  ████████████████

Date drafted  02/27/2017

by  Jason Randazzo

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

SUBJEC TO PROTECTIVE ORDER                    US_03698

Exhibit C

FD-302 (Rev. 5-8-10)

- 1 of 2 -

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    06/18/2015

███████████, Inmate, Metropolitan Correctional Center (MCC), 150 Park Row, New York, New York, was advised of the official identity of the interviewing agents and the nature of the interview. He was advised of his constitutional rights, as per Federal Bureau of Investigation form FD-395, "Advise of Rights," which he verbally acknowledged understanding his rights and agreed to answer questions strictly regarding the nature of the interview. He then furnished the following information:

On May 18, 2015, ███████████ who was incarcerated in the dormitory of Unit 11 South of the MCC, was on his bed with sheets up around it and was watching a program on television about the interview by Diane Sawyer of Caitlyn Jenner when an inmate he identified as ███████████ tapped him on the shoulder from behind and stated to him,"Berto's not waking up!" As he walked over to the bunk bed of an inmate he identified as ROBERTO GRANT he saw that he was on his side on the floor near his chair. ███████ kicked his leg and stated,"Stop playin'! You kid too much." The leg was limp. A sheet had been up partially covering his bed. ███████ had been sitting on the bed of GRANT approximately three minutes earlier talking and laughing with him.

Although his eyes were cloudy, glossy and gray, he could see that he was still breathing, his chest going up and down. He had a weak pulse and his pants were wet with urine. A number of other inmates on the unit were also around him at this time, to include ███████ and the neighbor of GRANT.

The inmates called for the correctional officers and Correctional Officer (CO) KEARINS was the first CO who arrived at the gate but, due to institution policy, he could not enter the unit alone but asked the inmates inside to move the furniture away for them to have easy access to the inmate. After other COs arrived, KEARINS went to the head of GRANT while another CO went to his feet. GRANT, who was wet from inmates attempting to revive him, was dropped from about lower bunk height as the COs lifted him to put him on the stretcher.

Although GRANT has smoked a substance identified as K-2 in the past, he was unaware if he had smoked it that night. He did not appear to be high on it at the time. K-2 is readily available on the unit.

| | | |
|---|---|---|
| Investigation on | 06/11/2015 at | New York, New York, United States (In Person) |

File #   ███████████                       Date drafted   06/12/2015

by   Jason Randazzo, MCCAFFREY DANIEL X JR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of ___Interview of___ ████████████ , On __06/11/2015__ , Page __2 of 2__

      No one was in a position to assault him in any way and he does not have any ongoing disputes with anyone on the unit. He believes GRANT died from a medical issue. ████ was visibly upset as other inmates stated that GRANT slouched over slowly and crumpled to the floor.  When asked if it was possible for GRANT to have been assaulted while being incapacitated, ██████ stated that it could not happen or everyone on the unit would know about it. ██████ respected GRANT because GRANT lobbied the unit counselor to transfer ██████ to the unit.

SUBJEC TO PROTECTIVE ORDER

Exhibit D

FD-302 (Rev. 5-8-10)

**OFFICIAL RECORD**
Document participants have digitally signed.
All signatures have been verified by a
certified FBI information system.

## FEDERAL BUREAU OF INVESTIGATION

Date of entry ___06/18/2015___

████████████, Inmate, Metropolitan Correctional Center (MCC), 150 Park Row, New York, New York, was advised of the official identity of the interviewing agents and the nature of the interview. He was advised of his constitutional rights, as per Federal Bureau of Investigation form FD-395, "Advise of Rights," which he verbally acknowledged understanding his rights and agreed to answer questions strictly regarding the nature of the interview. He then furnished the following information:

On May 18, 2015, ████████ who was incarcerated in the dormitory of Unit 11 South of the MCC, was watching television from his bunk bed when an inmate he identified as ████████ came up from behind him to advise him that another inmate he identified as ROBERTO GRANT was lying on the floor and not responding to him. ████████ thought that GRANT may have been playing around with ██████ and the guy in the bunk next to GRANT but walked over to GRANT, who was face down on the floor, and tapped his leg to see if he was playing. GRANT was making a snoring noise and sweating profusely. When it appeared that GRANT was in distress, they picked GRANT up from the floor and placed him on the bed as other inmates alerted the correctional officers (CO) at the gate. ████████ placed wet rags on his face as GRANT appeared to take one small breathe.

The correctional officers (CO) responded to the unit and dropped GRANT as the COs tried to lift him to put him on the stretcher and he banged his head on the floor. ████████ then knew that something was really wrong with GRANT as he did not react to striking his head.

No one was in a position to assault him in any way and he does not have any ongoing disputes with anyone on the unit. There was no foul play involved in this incident.

| | | | |
|---|---|---|---|
| Investigation on | 06/11/2015 | at | New York, New York, United States (In Person) |

File # ████████

Date drafted ___06/12/2015___

by  Jason Randazzo, MCCAFFREY DANIEL X JR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Exhibit E

FD-302 (Rev. 5-8-10)

- 1 of 2 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    06/18/2015

████████████ , Inmate, Metropolitan Correctional Center (MCC),
150 Park Row, New York, New York, was advised of the official identity of
the interviewing agents and the nature of the interview.  He was advised of
his constitutional rights, as per Federal Bureau of Investigation form
FD-395, "Advise of Rights," which he acknowledged both verbally and then by
signing the waiver at the bottom of the form. He then furnished the
following information:

On May 18, 2015, ████████ who was incarcerated in the dormitory
of Unit 11 South of the MCC, was laying on his bunk bed listening to his
radio when he heard someone say that Berto passed out. He grabbed a bowl of
ice and walked over to the area of the bunk bed of an inmate he identified
as ROBERTO GRANT. There he saw other inmates he identified as ████████
and ████████ who he later identified as ████████, cleaning the face of
GRANT, who was lying on his bed and breathing, although he was straining to
breathe, and clenching his teeth. Although he urinated in his pants, his
legs were moving.

The correctional officers (CO) responded to the unit and asked
the inmates to move the furniture. As CO KEARINS grabbed the top half of
GRANT and CO AJARI grabbed his legs, CO KEARINS slipped and dropped GRANT
from waist height as the COs tried to lift him to put him on the stretcher
and he banged his head on the floor. GRANT appeared lifeless after striking
his head hard enough that he "felt it." The inmates then got on KEARINS.

Although GRANT and CO KEARINS did not have a good relationship,
no one else has any ongoing disputes with anyone else on the unit. There
was no foul play involved in this incident.

Investigation on   06/11/2015   at   New York, New York, United States (In Person)

File #  ████████

Date drafted   06/12/2015

by   Jason Randazzo, MCCAFFREY DANIEL X JR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

SUBJEC TO PROTECTIVE ORDER

US_03690

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of ██████████ , On 06/11/2015 , Page 2 of 2

SUBJEC TO PROTECTIVE ORDER                    US_03691

Exhibit F

FD-302 (Rev. 5-8-10)

- 1 of 2 -



### FEDERAL BUREAU OF INVESTIGATION

Date of entry    07/21/2015

███████████  Inmate, Metropolitan Correctional Center (MCC), 150 Park Row, New York, New York, was advised of the official identity of the interviewing agents and the nature of the interview. He was advised of his constitutional rights, as per Federal Bureau of Investigation form FD-395, "Advise of Rights," which he acknowledged both verbally and then by signing the waiver at the bottom of the form. He then furnished the following information:

On May 18, 2015, █████, who was incarcerated in the dormitory of Unit 11 South of the MCC, was watching television when he heard other inmates saying that there is a problem with an inmate he identified as ROBERTO GRANT, also known as Berto. He walked over to the area where Berto was lying on his bunk bed and thought he was playing around. The inmates then called to the correctional officers (COs), who came into the unit and attempted to lift GRANT from his bunk bed when he was dropped very hard to the floor. His head struck the floor and everyone was very upset.

Berto looked limp and he had a wet spot on his pants. █████ had spoken to GRANT by his bunk bed only a few minutes earlier before the incident. He was laughing and joking but now he did not move at all. His neighbors, including █████ were also there talking to GRANT.

GRANT did not have any problems or ongoing disputes with anyone on the unit and was well-liked by everyone there. No one on the unit would have hurt Berto and it would be impossible to hurt him without other inmates intervening. He also stated that a rumor was going around that his windpipe was crushed and that staff was trying to blame K-2 and the inmates rather than take the blame for dropping him.

He smells a substance identified as K-2 on the unit a lot.

Investigation on  06/25/2015  at  New York, New York, United States (In Person)

File # ███████████                          Date drafted  06/25/2015

by  Jason Randazzo, MCCAFFREY DANIEL X JR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SUBJECT TO PROTECTIVE ORDER

US_03480

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of ███████████ , On  06/25/2015 , Page  2 of 2

SUBJECT TO PROTECTIVE ORDER                    US_03481

Exhibit G

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry      06/18/2015

███████████████, Inmate, Metropolitan Correctional Center
(MCC), 150 Park Row, New York, New York, was advised of the
officialidentity of the interviewing agents and the nature of the
interview.  He was advised of his constitutional rights, as per Federal
Bureau of Investigation form FD-395, "Advise of Rights," which he verbally
acknowledged understanding his rights and agreed to answer questions
strictly regarding the nature of the interview. He then furnished the
following information:

     On May 18, 2015, ██████ who was incarcerated in the dormitory of
Unit 11 South of the MCC, was washing his utensils in the bathroomwhen
inmates rushed inside for water. When he left the bathroom he saw inmates
huddled over an inmate he identified as ROBERTO GRANT.

     The correctional officers (CO), who he identified as KEARINS
and a black CO, responded to the unit. KEARINS and the other CO dropped
GRANT when he slipped from their hands as they lifted him from the bed and
tried to put him on the stretcher. Both his head and upper back struck the
floor, creating an echo. He looked very limp but he could not tell if he
was breathing. The inmates were then moved away from the scene into the gym
area.

     GRANT smoked a substance identified as K-2 that day but not at
the time of the incident.

     Before ██████ went to the bathroom he saw GRANT sitting up in his
bunk bed talking to other inmates, who he could not identify since he is
relatively new on the unit. No one was in a position to assault him in any
way and he does not have any ongoing disputes with anyone on the unit.
There was no foul play involved in this incident or ██████ would know if
there it had happened. He thought GRANT suffered a seizure.

---

Investigation on   06/11/2015   at   New York, New York, United States (In Person)

File # ████████████████                                       Date drafted   06/12/2015

by   Jason Randazzo, MCCAFFREY DANIEL X JR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

SUBJEC TO PROTECTIVE ORDER                    US_03687