UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X     17 Civ. 6779 (RA)
NICOLE MORRISON, as Administrator for the Estate
Of Roberto Grant, and NICOLE MORRISON, as Mother
and Legal Guardian for the Property of AG and SG,
Decedent's Minor Children,                                                    **PLAINTIFF'S STATEMENT OF**
                                                                              **MATERIAL UNDISPUTED**
                                                                              **FACTS PURSUANT TO LOCAL**
                                                                              **CIVIL RULE 56.1**

                                            Plaintiff(s),

        -against-

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF PRISONS, CORRECTION
OFFICER KERN, EXECUTIVE ASSISTANT LEE PLOURDE,
and JOHN AND JANE DOE(S) AGENTS, SERVANTS AND
EMPLOYEES OF THE DEFENDANTS,

                                            Defendant(s),
------------------------------------------------------------------------X

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, Plaintiff NICOLE MORRISON, as Administrator for the Estate Of Roberto Grant, and NICOLE MORRISON, as Mother and Legal Guardian for the Property of AG and SG, Decedent's Minor Children, makes the following statement of facts:

1.      Decedent Roberto Grant was formerly incarcerated in the care, custody, and control of the Defendants at the Metropolitan Correction Center in lower Manhattan on May 19, 2015. See Amended Complaint.

2.      At the time of his death, Mr. Grant's body was found within a dormitory area of the prison accessible by other prisoners. See Amended Complaint.

3.      At the time of his death, Mr. Grant was 35 years of age. See Amended Complaint.

4.      At the time of his death, Mr. Grant was survived by two minor daughters he fathered with Nicole Morrison. See Amended Complaint.

5. Crecita Williams is the mother of Roberto Grant. See Amended Complaint.

6. On January 10, 2017 the Office of the Chief Medical Examiner of the City of New York issued a Report of Autopsy deriving from an examination of Mr. Grant's remains on May 19, 2015. Exhibit A of Plaintiff's declaration.

7. Dr. Hammers final diagnosis stated Mr. Grant suffered from the following injuries at the time of his death: Blunt Force Trauma Of (the) Head, Neck, Torso, and Extremities, Petechial Hemorrhages of the Eyes, Periorbital Soft Tissue and Muscle, Oral Mucosa, Posterior Oropharynx, Base of Tongue, Trachea, Esophagus, and Temporalis Muscles. Blotchy Sclera Hemorrhages, Bilateral. Subcutaneous Emphysema, Eye Lids and Periorbital Tissues. Distention of Neck Veins and Temporal Vessels, Marked. Contusion, Right Lower Lip. Excoriations, Oral Mucosa of Lips. Neck Muscle and Soft Tissue Hemorrhages, Multiple, Bilateral, Tracheal Ring Hemorrhage, Large. Peri-Carotid Artery Hemorrhages, Bilateral. Hemorrhage of Tongue, Left (1/2"). Subscapular Hemorrhage (3), Occipital (2" Each). Cerebral Edema, Moderate. Hemorrhage, Left Forearm Muscle (5"), Right Elbow (1/2"), Left Shoulder (4"), And Right Lateral Chest Soft Tissues (1"). Deep Lung Parenchymal Laceration (1"), Left Lower Lobe. Exhibit A of Plaintiff's declaration.

8. Dr. Hammers report reflects blunt force trauma of the head, neck, torso, and extremities as the first listed condition Mr. Grant suffered at the time of his death. Exhibit A of Plaintiff's declaration.

9. Dr. Hammers report also reflects Mr. Grant suffered from Peri-Carotid Artery Hemorrhages, bilaterally at the time of his death. Exhibit A of Plaintiff's declaration

10. Dr. Zhongxue Hua found that, at the time of his death, Mr. Grant "….suffered recent, multiple, and significant, neck compression in multiple areas of his neck." Exhibit B and P of Plaintiff's declaration.

11. Dr Hua further opined that Mr. Grant's "…cause of death should be listed as inflicted and/or homicidal neck compression." Exhibit B and P of Plaintiff's declaration.

12. Dr. Robert Gill, referred to the severe injuries suffered by Mr. Grant as "minor blunt force trauma" within his report. (See Exhibit C – Pg. 3 – Point 5 – Dr. Gill's report - of Plaintiff's Declaration).

13. Dr. Hammers report does not reflect the blunt force trauma suffered by Mr. Grant at the time of his death was minor.

14. Dr Hammers report reflect the narrowing of Mr. Grant's left main coronary artery was slight. See Exhibit A of Plaintiff's Declaration.

15. In Greco v. Orthopedic & Sports Medicine Clinic, P.C., 2015 IL. App. (5th) 130370, the Court found that Dr. Gills testimony "….floated about untethered, and invited nothing more than inappropriate speculation about the cause of the decedent's death." See Exhibit F of Plaintiff's Declaration.

16. Neither Dr. Hammers nor plaintiff's expert, Dr. Hua, presented any evidence that Mr. Grant's "slight 50%" narrowing of his left main coronary artery led to his death. See Exhibit A, B, and P.

17. A handwritten note by an agent, servant, and employee of the defendant stated that Mr. Grant's injuries were "Not CPR Related", "Hyoid Bone Not Broken But Compressed & Bruised", "lots of Hemro. front & Back of Neck", "Petechiae In The Eyes/Neck/Mouth", "Consist. Of Being Choked". See Plaintiff's Declaration - Exhibit I - US__00237.

18. Defense witness FBOP Officer Dionysia Georgopoulos, along with Officer Michael Kearins, were on duty and posted to the housing area on the evening the decedent's death.

19. On June 18, 2015, July 21, 2015, and September 18, 2915, Officer Georgopoulos was interviewed by the FBI who were investigating Mr. Grant's murder. Exhibit J – Georgopoulos

302 statements – and Exhibit K – Georgopoulos deposition transcript – pg. 38, line 25 through pg. 40 line 3 - of Plaintiff's declaration.

20. During Officer Georgopoulos's multiple interviews with the FBI, she stated that she was told by one of the inmates in Mr. Grants dorm that he was choked to death by another inmate during a game of horseplay. Exhibit J – Georgopoulos 302 statements – and Exhibit K – Georgopoulos deposition transcript – pg. 38, line 25 through pg. 40 line 3 - of Plaintiff's declaration.

21. Officer Georgopoulos further testified that she felt Mr. Grant was murdered. Exhibit J – Georgopoulos 302 statements – and Exhibit K – Georgopoulos deposition transcript – pg. 38, line 25 through pg. 40 line 3 - of Plaintiff's declaration.

22. Plaintiff's prison conditions expert, Tim Gravette, a retired FBOP deputy warden with over 20-years-experience, regarding Officer Georgopolous's testimony, opined "… I trust what she says to be an accurate description of what she feels happened on the night of 05/18/2015 when Roberto Grant was found unresponsive in his assigned area of the unit." (See Exhibit L pg. 4 of Plaintiff's declaration.)

23. Mr. Gravette found the statement of Mr. Grant's fellow inmates as contradictory and less credible than Officer Georgopoulos's description of what occurred to Mr. Grant on May 18, 2015. Exhibit O pg. 55 line 11 through pg. 56 line 6.

24. Defense witnesses Captain Michael Craig Ward and Operations Lieutenant Patrick DeLaney were supervisors of Officers Georgopolous and Kearins on the night of Mr. Grants death.

25. Both Ward and Delaney testified that patrol rounds by Correction Officers must be conducted every 30-40 minutes within housing areas. Exhibit M – pg. 33 line 18 through pg.

34, line 17 and N – pg. 44, line 22 through pg. 45, line 11 - of Plaintiff's declaration, respectively.

26. According to Mr. Gravette, this would require correctional officers to patrol at least 16 times during an 8-hour tour. Exhibit L of Plaintiff's Declaration.

27. Officer Georgopoulos testified that she and Officer Kearins only patrolled a few times during their tour at the time Mr. Grant was murdered. Exhibit K pg.21, line 24 through pg. 25, line 10.

28. Mr. Gravette explicitly states with "high probability" that Roberto Grant was choked to death by another inmate and that the defendants are responsible for his death since they failed to do their required rounds with the frequency ordered by their superiors. Exhibit O – page 36 line 12 through pg. 40 line 12, pg. 41 line 6 through 10, pg. 47 line 3 through pg. 48 line 17, pg 49 line 21 through pg. 51 line 24, pg. 53 line 16, pg. 57 line 15 through pg. 59 line 17 and pg. 61 line 20 through pg. 65 line 11.

29. Defendants claim that review of all witness statements were a necessity to determine cause of death, yet Dr. Gill only reviewed "some." See Exhibit G pg. 28 line 12 through pg. 29 line 11.

30. Dr. Hammers autopsy report does not reflect she reviewed any witness statements related to the death of Roberto Grant. See Exhibit A.

31. There were 332 autopsy photographs taken of Mr. Grant. See Exhibit B and P.

32. Dr. Gill's initial report reflects he only reviewed 51 autopsy photographs. See Exhibit C.

33. At least three toxicology screenings were performed on Mr. Grants remains. All revealed negative results for synthetic cannabinoids or any illegal substances. See Exhibit A.

Dated: New York, New York
       July 29, 2021

                                            **LAW OFFICE OF**
                                            **ANDREW C. LAUFER, PLLC**

                                            By: Andrew C. Laufer
                                            Attorney for Plaintiff
                                            NICOLE MORRISON
                                            264 West 40th Street, Suite 604
                                            New York, New York 10018
                                            (212) 422-1020

To: