# EXHIBIT B

Zhongxue Hua, MD-PhD
Forensic Pathologist and Neuropathologist

March 11, 2020

Andrew C. Laufer, Esq.
Law Office of Andrew C. Laufer, PLLC
264 West 40th Street, Suite 604
New York, New York 10015

RE:   Roberto Grant (deceased)
      Date of Birth:  3/28/1980
      Date of Death:  5/19/2015

Dear Mr. Laufer:

      I, ZHONGXUE HUA, a physician duly licensed to practice medicine in the State of New York, hereby affirm under penalty of perjury and upon information and belief:

1. I am Board Certified in the fields of Forensic Pathology, Neuropathology, and Anatomic Pathology.  I maintain an office for the practice of forensic consultation at 415 Main Street, Suite 1C, New York, New York 10044.
2. At your request, I have reviewed the following regarding the death investigation of Roberto Grant by the Office of Chief Medical Examiner (OCME), including autopsy notes (on 5/19/2015), 338 autopsy photographs, case information (on 5/19/2015), police report (on 5/19/2015), toxicology report (on 5/28/2015) by National Medical Services (NMS), neuropathology report (on 6/25/2015), OCME's toxicology report (on 9/21/2015), OCME's supplemental toxicology report (on 9/13/2017), and autopsy report (on 12/28/2016);
3. It is my understanding that at 11:40 p.m. on 5/18/2015, Roberto Grant ("Roberto"), a 35-year-old inmate, was found unresponsive in his cell at the Federal Correctional Facility in Manhattan, New York.  After a brief resuscitation, he was pronounced dead at 12:33 a.m. and Dr. Jennifer Hammers performed an autopsy at 9:30 a.m. on 5/19/2015;
5. Autopsy photographs and autopsy report revealed blunt trauma to the head, neck, torso, and extremities.  Three (3) postmortem toxicology reports--two at OCME and one at NMS--revealed no acute intoxication by drug, prescription medication, or alcohol.  Dr. Hammer's final autopsy report (on 12/28/2016) concluded that both the cause and manner of death were "undetermined";
7. Per autopsy photographs, Roberto had autopsy evidence of neck compression.  Specifically, Roberto had multiple, significant, and recent injuries to his neck soft tissues as well as multiple and significant eye petechiae and hemorrhages;
8. Multiple, recent, small, and discrete foci of neck injuries were on both sides of his neck involving the upper, middle, and lower portions.  The



neck injuries were significantly more on the front than on the back of the neck, involving neck blood vessels and multiple neck muscles (including bilateral sternocleidomastoid muscles, bilateral omohyoid muscles, left cricohyoid muscle, and left paraspinal muscles).  Although there was not a neck bone fracture, same neck compression marks (manifested as soft tissue hemorrhages) were on the surfaces of the bilateral hyoid bone, inferior thyroid cartilage, and bilateral tracheal rings;

9. I agreed with Dr. Hammers that Roberto had "abundant petechial hemorrhages" in his conjunctivae, sclera, and oral mucosa.  Roberto's eyes had more than 50 petechiael hemorrhages;

10. In addition, Roberto had evidence of recent, non-fatal blunt trauma to his head, torso, and extremities;

11. In the absence of any positive finding(s) from three (3) toxicology reports (which were tested from 2015 to 2017), Roberto's inflicted neck compression should and would be considered a valid cause of death;

12. If acute intoxication is still suspected now and the original toxicology specimens (from four years ago) are still available, further toxicology testing could be attempted again.  However, an acute intoxication would not explain Roberto's acute, multiple, and significant neck compression and eye petechiae and hemorrhages;

13. Based on my experience both as a practicing forensic pathologist and neuropathologist, within a reasonable degree of medical certainty, it is my considered opinion that Roberto suffered recent, multiple, and significant neck compression in multiple areas of his neck.  In the absence of his fatal and acute intoxication or fatal natural disease, Roberto's cause of death should be listed as inflicted and/or homicidal neck compression;

11. I would testify to the above if called as a witness at trial.  I reserve the right to amend my findings and opinions in the event additional information comes forth during further legal proceeding.

Zhongyue Hua, MD-PhD
March 11, 2020

