# EXHIBIT D

FD-302 (Rev. 5-8-10)  — 1 of 1 —


OFFICIAL RECORD

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry  07/06/2015

████████ NYDOCS inmate ████████ with a DOB of ████████ was interviewed at Upstate Correctional Facility in Malone, NY. After being advised of the official identity of the interviewing agent and Task Force Officer and the nature of the interview ████ provided the following information to SA Paul Scuzzarella and TFO Dennis Klose:

    On May 18, 2015, ████, who was incarcerated in the dormitory of Unit 11 South of the MCC, advised that he was right next to Roberto Grant, also known as Berto, as he fell to the floor saying "OOOO". ████ had been talking with GRANT prior to him falling to the ground. As he fell he grabbed his chest. Many of us thought he was kidding. He was still breathing while he was on the ground but was sweating a lot. These events occurred sometime around 10 pm. His codefendent ████ came over to check on him. At this time I called out to Officer Kearns who said he had to get permission to enter the dormitory. It took the guards about 4 to 5 minutes to get to GRANT to help him. Inmates were around GRANT when the officers started to move him. Officer Kearns had him by the head while another Officer had his feet. Officer Kearns dropped GRANT on his head. ████ stated that he was not sure whether this occurred intentionally or was an accident due to the situation. Officer Kearns and GRANT had issues and Officer Kearns had issued GRANT citations in the past. All the inmates were then escorted from the dormitory area to the gym. ████ stated that he did not see any inmate do anything to hurt GRANT prior to him falling on the ground or while he was on the ground. While we were locked in the gym area they used a defibrillator on GRANT.

    ████ was not aware of GRANT smoking K-2 and GRANT did not have any problems or ongoing disputes with any inmates on the dormitory unit. ████ self admitted to being a ████████ out of the Bronx. He also advised that Corey Smith who is on the dormitory unit and Roberto Grant were ████. ████ stated that CRIPS and BLOODS can associate in Federal Custody but not in state custody. ████ provided no further information regarding this incident.

Investigation on  07/02/2015  at  Albany, New York, United States (In Person)

File #  90A-NY-6383364                                        Date drafted  07/06/2015

by  SCUZZARELLA PAUL D

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SUBJECT TO PROTECTIVE ORDER

US_03487

FD-302 (Rev. 5-8-10)

- 1 of 1 -



# FEDERAL BUREAU OF INVESTIGATION

Date of entry  03/17/2017

▓▓▓▓▓ date of birth (DOB) ▓▓▓▓▓, was interviewed at Port Isabel Detention Center (PIDC) 27991 Buena Vista Blvd. Los Fresnos, Tx. 78566. After being advised of the identity of the interviewing Agent and the nature of the interview, ▓▓▓▓ provided the following information:

▓▓▓▓ was interviewed at PIDC regarding inmate Roberto Grant (Grant), DOB 3/28/1980 to determine any discrepancies from previous interview on 6/25/2015. ▓▓▓▓ stated he was in the shower when a Corrections Officer (CO) came in to the shower area, told everyone to get out and was escorted by CO's to another location of the correctional facility. Initially ▓▓▓▓ thought there was a fight because all he saw was a group of people. He was unable to hear anything unusual prior to the CO coming in to the shower area. ▓▓▓▓ said has not heard any rumors or talking about Grant because he keeps to himself. He said Grant was a liked guy and didn't think he had any issues with any other inmates. He had no knowledge of inmates smoking any type of substances in the correction facility.

---

Investigation on  03/14/2017   at  Los Fresnos, Texas, United States (In Person)

File #  90A-NY-6383364                                          Date drafted  03/16/2017

by  Albert Fonseca

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SUBJEC TO PROTECTIVE ORDER

US_03699

FD-302 (Rev. 5-8-10)

-1 of 1-


OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION

Date of entry  03/10/2017

▓▓▓▓▓▓▓ former inmate, Metropolitan Correctional Center (MCC), 150 Park Row, New York, New York, (▓▓▓)▓▓▓-▓▓▓▓, was advised of the official identity of the interviewing agent and the nature of the interview. He then furnished the following information:

▓▓▓▓▓ stated that for approximately twenty minutes he was in the company of ROBERTO GRANT and was about five to six feet away from him before GRANT sat down on the floor and then lied there in a prone position. He had smoked a cigarette with GRANT, who had also smoked K-2 during the time. He attempted to alert GRANT that he was going to have another cigarette when GRANT did not respond to him or the other inmates. The time that they picked GRANT up from the floor to put him on the bed was the only time that anyone had made any contact with him. At no time had anyone assaulted, strangled or in any way harmed GRANT.

He described GRANT as a "well-respected dude." ▓▓▓▓▓ is now attending school to become a drug counselor.

---

Investigation on  02/27/2017  at  New York, New York, United States (Phone)

File #  90A-NY-6383364                                          Date drafted  02/27/2017

by  Jason Randazzo

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SUBJECT TO PROTECTIVE ORDER                                     US_03698

FD-302 (Rev. 5-8-10)

- 1 of 2 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry    06/18/2015

      ███████, Inmate, Metropolitan Correctional Center (MCC), 150 Park Row, New York, New York, was advised of the official identity of the interviewing agents and the nature of the interview. He was advised of his constitutional rights, as per Federal Bureau of Investigation form FD-395, "Advise of Rights," which he verbally acknowledged understanding his rights and agreed to answer questions strictly regarding the nature of the interview. He then furnished the following information:

      On May 18, 2015, ███████ who was incarcerated in the dormitory of Unit 11 South of the MCC, was on his bed with sheets up around it and was watching a program on television about the interview by Diane Sawyer of Caitlyn Jenner when an inmate he identified as ███████ tapped him on the shoulder from behind and stated to him,"Berto's not waking up!" As he walked over to the bunk bed of an inmate he identified as ROBERTO GRANT he saw that he was on his side on the floor near his chair. ███████ kicked his leg and stated,"Stop playin'! You kid too much." The leg was limp. A sheet had been up partially covering his bed. ███████ had been sitting on the bed of GRANT approximately three minutes earlier talking and laughing with him.

      Although his eyes were cloudy, glossy and gray, he could see that he was still breathing, his chest going up and down. He had a weak pulse and his pants were wet with urine. A number of other inmates on the unit were also around him at this time, to include ███████ and the neighbor of GRANT.

      The inmates called for the correctional officers and Correctional Officer (CO) KEARINS was the first CO who arrived at the gate but, due to institution policy, he could not enter the unit alone but asked the inmates inside to move the furniture away for them to have easy access to the inmate. After other COs arrived, KEARINS went to the head of GRANT while another CO went to his feet. GRANT, who was wet from inmates attempting to revive him, was dropped from about lower bunk height as the COs lifted him to put him on the stretcher.

      Although GRANT has smoked a substance identified as K-2 in the past, he was unaware if he had smoked it that night. He did not appear to be high on it at the time. K-2 is readily available on the unit.

---

| | |
|---|---|
| Investigation on   06/11/2015   at   New York, New York, United States (In Person) | |
| File #   90A-NY-6383364 | Date drafted   06/12/2015 |
| by   Jason Randazzo, MCCAFFREY DANIEL X JR | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SUBJEC TO PROTECTIVE ORDER      US_03688

No one was in a position to assault him in any way and he does not have any ongoing disputes with anyone on the unit. He believes GRANT died from a medical issue. Shaky was visibly upset as other inmates stated that GRANT slouched over slowly and crumpled to the floor. When asked if it was possible for GRANT to have been assaulted while being incapacitated, ███████ stated that it could not happen or everyone on the unit would know about it. ███████ respected GRANT because GRANT lobbied the unit counselor to transfer ███████ to the unit.

SUBJEC TO PROTECTIVE ORDER                US_03689


OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry __08/12/2015__

███████ date of birth (DOB) ███████ FBOP Inmate Registry ███████ was interviewed at the Central Treatment Facility (CTF), DCDOC, 1901 D St. SE, Washington D.C. on 8/5/2015 by FBI Special Agents Chad Fleming and Robert Graves. After being advised of the identity of the interviewing Agents and the nature of the interview, and that the interview was audio recorded, FORD provided the following information:

On the Night of 5/19/2015, when inmate ROBERTO (aka "BERTO") GRANT died, FORD was an inmate present in the same dormitory at the MCC-New York. FORD had been transferred from CTF, DCDOC to MCC-NY for a period of 3-4 weeks ███ ███████████████████████ had daily contact with GRANT for just under 4 weeks and was transferred back to CTF, DCDOC a few days after GRANT's death.

███ described the dormitory as an "open" bay/pod with one access door. Bunk beds were arrayed around the walls in a "U" shape from the door, with tables in the middle of the room. He said there were approximately 20 people in the pod. GRANT slept in the corner bunk on the bottom. He did not have a bunk-mate. ███ slept in a bunk on the adjacent corner about 10 feet away. There were approximately 2 bunks in between GRANT and ███. GRANT's closest friend bunked right next to GRANT. ███ could not remember his name.

When ███ first arrived, GRANT provided him some clothes. If GRANT had food, he always shared it and treated you like he knew you. Although ███ said he did not "hang" with GRANT, he was a "good dude." According to ███ GRANT "ran the show."

On the night GRANT died, while ███ lay on his bunk, he noticed GRANT sitting on his bunk. Suddenly, GRANT stood up and then passed out, falling, and hitting his head. GRANT did not, or could not, speak. He was shaking and convulsing. ███ said it seemed like he was choking and

---

Investigation on __08/05/2015__ at District Of Columbia, District Of Columbia, United States (In Person)

File # __90A-NY-6383364__                                           Date drafted __08/06/2015__

by __Chad M Fleming, ROBERT GRAVES__

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

grasping for air. ▓▓▓ thought he was "playing" because the inmates were always playing around with each other. Some other inmates were shaking GRANT to see if he was all right. ▓▓▓ could not remember their names.

▓▓▓ said that the inmates started calling for help. There was a guard at the door, but the response was delayed because he could not enter the pod until a second guard arrived. The guards ordered all the inmates into the recreation room, but ▓▓▓ said they could still see what was happening. ▓▓▓ said the guards attempted to pick GRANT up and place him on a stretcher, but dropped him in the attempt and GRANT hit his head again. Eventually medical personnel arrived, put GRANT on the stretcher, and took him away. ▓▓▓ said GRANT looked dead.

The next day, the inmates heard GRANT was dead. ▓▓▓ said the guards put all the inmates close to GRANT in the "hole" and said they were under investigation for murder. That surprised ▓▓▓ because "no one did anything to him." ▓▓▓ said that GRANT was not not fighting or beefing with anyone and saw no one attack, choke, or hit him.

▓▓▓ said that he saw GRANT was smoking "K2" at the time of his death. K2 was present in the pod on a regular basis and that most of the inmates smoked it. Guards would occasionally do a search, but never find anything. ▓▓▓ said that GRANT smoked K2 back to back, one right after the other. The inmates spray fragrance to hide the smell, and were doing that as the guards came in to help GRANT. ▓▓▓ has never seen another inmate react badly to the drug or overdose.


Date of entry    12/18/2017

▬▬▬▬▬▬▬ was advised of the official identity of the interviewing agent and the nature of the interview. He was interviewed at the offices of United States Probation, Southern District of New York, 300 Quarropas Street, Ground Floor, White Plains, New York, in the presence of United States Probation Officer JOSEPH LOMBARDO. He then furnished the following information:

▬▬▬▬▬▬▬ recalled that on May 18, 2015, he was an inmate who was incarcerated in the dormitory of Unit 11 South of the Metropolitan Correctional Center (MCC), which is located at 150 Park Row, New York, New York. After the count, which would have placed the time at approximately 10:00 P.M., he was sitting on the bed while he was talking to another inmate he identified as ROBERTO GRANT. Two other inmates he could only identify as ▬▬▬ and ▬▬▬ were also in close proximity talking to them. GRANT then asked him to let him lie down in his bed and ▬▬▬ got up and sat in a chair at the foot of the bed. At some point in time as he was lying on the bed, GRANT stated that he was not going to take a shower that day. A short time later, GRANT sat up, put his feet on the floor, leaned over, slumped and crumpled forward and slowly fell to the floor. His chin rested on the floor as his head was by the feet of ▬▬▬. ▬▬▬ told him to stop playing before he rose from his seat, stood on the other side of GRANT, kicked his leg and stated, "Stop playin'!" As he called over another inmate he identified as ▬▬▬, who looked at GRANT and also told him to stop playing before going back to watching television.

GRANT began to make a snoring noise and ▬▬▬ saw that he was sweating profusely on the back of his head. He pulled down a cloth that was covering a light and wiped the sweat from GRANT. When it was decided that GRANT was not playing with them and was seriously ill, they alerted the correctional officers (CO), who then responded to the unit. He again recalled that CO KEARINS dropped GRANT from about waist height as the COs tried to lift him to put him on the stretcher and he banged his head on the floor. Although CO KEARINS and GRANT had their differences in the past, ▬▬▬ did not believe that he was dropped purposefully.

▬▬▬ and the other aforementioned inmates had smoked a substance identified as K2 earlier that day with GRANT. GRANT distributed K2 to other inmates in the unit, although he never divulged that information to ▬▬▬ but it was known amongst the inmates. GRANT did tell ▬▬▬ that he had friends and family, to include his wife, bring him the K2 through their visits in the Visiting Room.

| | | |
|---|---|---|
| Investigation on | 12/15/2017 at | White Plains, New York, United States (In Person) |
| File # | 90A-NY-6383364 | Date drafted 12/15/2017 |
| by | Jason Randazzo | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.
SUBJECT TO PROTECTIVE ORDER    US_03703

90A-NY-6383364

Continuation of FD-302 of (U) Interview of ~~Corey Thomas~~ , On 12/15/2017 , Page 2 of 2

No one assaulted GRANT and he did not have any ongoing disputes with anyone on the unit.

SUBJECT TO PROTECTIVE ORDER        US_03704

FD-302 (Rev. 5-8-10)                    - 1 of 2 -                     OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry     07/21/2015

▓▓▓▓▓▓▓, Inmate, Metropolitan Correctional Center (MCC), 150 Park Row, New York, New York, was advised of the official identity of the interviewing agents and the nature of the interview. He was advised of his constitutional rights, as per Federal Bureau of Investigation form FD-395, "Advise of Rights," which he acknowledged both verbally and then by signing the waiver at the bottom of the form. He then furnished the following information:

On May 18, 2015, ▓▓▓ who was incarcerated in the dormitory of Unit 11 South of the MCC, was watching television when he heard other inmates saying that there is a problem with an inmate he identified as ROBERTO GRANT, also known as Berto. He walked over to the area where Berto was lying on his bunk bed and thought he was playing around. The inmates then called to the correctional officers (COs), who came into the unit and attempted to lift GRANT from his bunk bed when he was dropped very hard to the floor. His head struck the floor and everyone was very upset.

Berto looked limp and he had a wet spot on his pants. ▓▓▓ had spoken to GRANT by his bunk bed only a few minutes earlier before the incident. He was laughing and joking but now he did not move at all. His neighbors, including ▓▓▓, were also there talking to GRANT.

GRANT did not have any problems or ongoing disputes with anyone on the unit and was well-liked by everyone there. No one on the unit would have hurt Berto and it would be impossible to hurt him without other inmates intervening. He also stated that a rumor was going around that his windpipe was crushed and that staff was trying to blame K-2 and the inmates rather than take the blame for dropping him.

He smells a substance identified as K-2 on the unit a lot.

Investigation on  06/25/2015  at  New York, New York, United States (In Person)

File #  90A-NY-6383364                                     Date drafted  06/25/2015

by  Jason Randazzo, MCCAFFREY DANIEL X JR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SUBJECT TO PROTECTIVE ORDER                                         US_03480

90A-NY-6383364

Continuation of FD-302 of Interview of ███████ , On 06/25/2015 , Page 2 of 2

SUBJECT TO PROTECTIVE ORDER US_03481