UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLE MORRISON, as Administrator for the
Estate of Roberto Grant, and NICOLE MORRISON,
as Mother and Legal Guardian for the Property of
AG and SG, Decedent's Minor Children,

　　　　　　　　　　Plaintiffs,

　　　　　v.

UNITED STATES OF AMERICA, *et al.*,

　　　　　　　　　　Defendants.

17 Civ. 6779 (RA)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR
SUMMARY JUDGMENT BY DEFENDANT UNITED STATES OF AMERICA**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2746

JENNIFER C. SIMON
LUCAS ISSACHAROFF
Assistant United States Attorneys
　　*Of Counsel*

## TABLE OF CONTENTS

Preliminary Statement...................................................................................................... 1

Argument .......................................................................................................................... 2

    A.   Plaintiff Has Failed to Create a Genuine Dispute of Fact as to Whether Mr. Grant's Death Was Caused by Any Breach of a Duty Owed by the Government to Mr. Grant ........................ 2

    B.   Plaintiff's Arguments to the Contrary Are Without Merit..................................................... 3

    C.   The Testimony of Plaintiff's Expert Dr. Hua Should Be Deemed Inadmissible................. 6

    D.   There Is No Merit to Plaintiff's Assertion that the Testimony of Dr. Gill Should be Precluded........................................................................................................................ 8

Conclusion ....................................................................................................................... 10

Defendant United States of America, by its attorney, Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In her opposition brief, Plaintiff principally asserts that Mr. Grant was "beaten and strangled to death," Pl. Opp. (Dkt. No. 90) at 2, in United States custody at MCC,[1] due to the negligence of BOP officers in failing to conduct rounds with sufficient frequency. The Government has moved for summary judgment on the basis that Plaintiff has failed to raise a disputed issue of material fact as to the first element of her theory: that Mr. Grant was, in fact, killed, as opposed to dying of natural causes or a drug overdose. Contrary to Plaintiff's baseless assertions, not a single eyewitness present when Mr. Grant collapsed stated that they observed any fight or altercation. Instead, Plaintiff spends the bulk of her opposition addressing an issue not at issue in this motion: whether BOP officers were negligent. *See* Pl. Opp. at 7, 9-13.

This is perhaps understandable because Plaintiff's theory of homicide is contradicted by every eyewitness statement, and it relies instead upon speculation, rumor, and her expert's conditional conclusion based upon incomplete evidence. The scattered portions of Plaintiff's brief that attempt to tackle the cause of death fail to raise a triable issue of material fact.

Finally, Plaintiff argues (without a cross-motion) that the Government's forensic pathologist should be precluded. In making this argument, Plaintiff misrepresents the findings of a state court decision relating to a prior matter handled by Dr. Gill and offers no basis on which

---

[1] Unless otherwise noted, all abbreviations used are the same as those indicated in the Government's opening memorandum of law, Dkt. No. 82.

to preclude Dr. Gill's testimony.  Dr. Gill is manifestly qualified and applied reliable principles and methods to the *complete* facts of the case, which include the eyewitness statements that Dr. Hua acknowledged should be considered in forming a pathologist's conclusion.

Plaintiff has accordingly failed to raise a triable issue of fact as to whether any wrongful act or omission by the Government was the cause of Mr. Grant's death, and the Government is entitled to summary judgment.

ARGUMENT

**A.   Plaintiff Has Failed to Create a Genuine Dispute of Fact as to Whether Mr. Grant's Death Was Caused by Any Breach of a Duty Owed by the Government to Mr. Grant**

As set forth in the Government's opening brief, the Government is entitled to summary judgment because Plaintiff fails to raise a triable issue of fact as to whether a breach of a duty, or any other wrongful act by BOP, caused Mr. Grant's death.  More specifically, even were Plaintiff to establish some alleged negligence, which the Government does not concede, "'[e]vidence of negligence is not enough by itself to establish liability,' for it also must be proved that the negligence was a proximate, or legal, cause of the event that produced the harm sustained by the plaintiff."  *Hain v. Jamison*, 28 N.Y.3d 524, 528 (2016) (quoting *Sheehan v. City of New York*, 40 N.Y.2d 496, 501 (1976)).  A defendant's negligence "qualifies as a proximate cause where it is a substantial cause of the events which produced the injury."  *Ferreira v. City of Binghamton*, 975 F.3d 255, 274 (2d Cir. 2020) (quoting *Hain*, 28 N.Y.3d at 529-30).

Here, Plaintiff's allegations lack any evidentiary support in the factual record.  In fact, other than the conditional opinion of Plaintiff's expert Dr. Hua, who concedes he cannot rule out an overdose or fatal natural disease, plaintiff identifies no admissible evidence that Mr. Grant died as the result of neck compression or any other injury attributable to alleged negligence on

2

the part of BOP.  *See* Hua Rpt. at 2; *see also* Hua Tr. 129:4-18, 132:2-20.  Plaintiff has thus

failed to raise a triable issue of fact as to whether Mr. Grant's death was caused by any act or

omission by BOP.

**B.    Plaintiff's Arguments to the Contrary Are Without Merit**

First, Plaintiff's principal argument has no bearing on the Government's motion.  In her

opposition, Plaintiff's principal argument is that she has "adequately present[ed] evidence

substantiating negligence," arguing that the manner in which BOP conducted rounds at MCC

constitute negligence.  However, even assuming BOP failed to adequately monitor the cell, a fact

that the Government does not concede, those allegations are not material to the Government's

motion.  As previously stated, Plaintiff has not identified any mechanism by which Plaintiff's

sudden collapse could have been prevented by greater BOP diligence or any defect in the

medical attention provided to Mr. Grant after his collapse.  Plaintiff's own prison conditions

expert, Roy Timothy Gravette, acknowledged that, if Mr. Grant died under non-homicide

circumstances, he would "have to reconsider [his] opinions" regarding BOP's responsibility for

Grant's death. Simon Decl., Exh. E, Excerpt from the Transcript of the February 24, 2021,

Deposition of Roy Timothy Gravette, 59:10-11; *see also id.* at 61:10.  In other words, even

assuming negligence in the manner in which BOP monitored the multi-inmate cell, Plaintiff has

failed to raise a triable issue of fact on the question of causation, *i.e.*, whether Plaintiff's sudden

collapse could have been prevented by greater BOP diligence.

Second, Plaintiff's reliance on the lay opinions of individuals who were not present at the

time Mr. Grant collapsed cannot create a triable issue of fact as to the cause of Mr. Grant's death.

For instance, Plaintiff's assertion that Officer Georgopoulos, who was not present at the time Mr.

Grant collapsed, "felt Mr. Grant was murdered," Pl. Opp. At 6, fails to raise a triable issue of fact

as to the cause of Mr. Grant's death.  Plaintiff argues that Officer Georgopolous's "rendition of

3

the facts is much more credible," *id.*, but Georgopolous simply was not present to witness Mr. Grant's collapse, and she has no medical training on which to base an opinion on Mr. Grant's cause of death.

Third, Plaintiff's vague assertion that the statements of eyewitnesses are conflicting does not have any merit.  In all material respects, the statements of the actual eyewitnesses to Mr. Grant's collapse are consistent:  The statements from inmates who personally saw Mr. Grant fall unconscious establish that Mr. Grant was on his bunk talking with other inmates immediately prior to his collapse. Randazzo Decl., Exhs. A, B; Scuzzarella Decl., Exh. A.  Mr. Grant then got up from the bunk, slumped over and fell to the floor unconscious.  *Id.*  Although Mr. Grant was still breathing immediately after falling to the floor, he remained unresponsive, urinated on himself, and was heard to make snoring noises. Randazzo Decl., Exh. A.  After Mr. Grant fell to the floor, other inmates became aware of his condition and approached Mr. Grant. They too observed that Mr. Grant was unresponsive, was having difficulty breathing and making snoring noises, and was wet with urine. Randazzo Decl., Exhs. C, D, E.  None of the witnesses to Mr. Grant's collapse observed any altercation or other disturbance prior to Mr. Grant's collapse. On the contrary, the witnesses consistently assert in their statements that Mr. Grant was talking with other inmates in the moments leading up to his collapse, see Randazzo Decl., Exhs. A, B, F, G; Scuzzarella Decl., Exh. A, and deny that it would have been possible for someone to assault Mr. Grant without them knowing, see Randazzo Decl., Exhs. A, C, D, F, G.  Plaintiff's own collection of inmate statements, presented in Exhibit D to the Laufer Declaration, also confirm

that the eyewitnesses consistently stated that Mr. Grant was sitting on his bunk[2] talking to other inmates[3] when he fell[4] or lay[5] down.

Plaintiff does not specify which statements he believes contradict each other.  Instead, she attempts to paint the witness statements as contradictory by claiming that one inmate thought there was a fight, and that two other inmates heard a rumor that Grant's windpipe was crushed. These characterizations of the inmate interviews are highly misleading.  With respect to the fight, it is not clear which interview Plaintiff is referencing; one interviewee stated that "*[i]nitially* [the interviewee] thought there was a fight because all he saw was a group of people" before he found out what was happening to Mr. Grant.  Laufer Decl. Ex. D at 3.  Plaintiff's mischaracterization of the rumor is similar: one inmate relayed that such a rumor was going around, but "he does not believe it because no one could have crept in and done that before someone would have stopped it," Laufer Decl. Ex. E at 2; another inmate referenced the rumor only in the context of specifically denying it: "[I]t would be impossible for it to happen without someone seeing it.  If someone had crushed his throat everyone would know about it," *id.* at 4.

The only possible inconsistency Plaintiff can identify is the manner in which the witnesses characterized Mr. Grant's collapse, *i.e.* whether he slumped over immediately from his position on the bunk or whether he was briefly in a standing position before falling unconscious. This minor variation is neither relevant nor a valid basis to question the reliability of the witness statements.  As set forth in the Government's opening brief, Plaintiff and her expert do not, and

---

[2] *See* Laufer Ex. D at 7, 9.

[3] *See id.* at 2, 5, 9, 11.

[4] *See id.* at 2, 7 (stating that he stood up, then fell down), 9.

[5] *See id.* at 4.

cannot, dispute that a person whose death is caused by strangulation, would not have an intervening "lucid" interval, in which they are observed to be casually conversing, between neck compression and death.  Gill Rpt. at 2.  That is to say, if neck compression were sufficient to cause death in an individual, the individual would not experience an interval of time between the compression of their neck and death in which they are able to engage in a normal conversation. *Id.*  Plaintiff has accordingly failed to raise a triable issue of fact as to whether any wrongful act or omission by the United States was the cause of Mr. Grant's death.[6]

## C.     The Testimony of Plaintiff's Expert Dr. Hua Should Be Deemed Inadmissible

Plaintiff's opposition brief offers no arguments against the Government's motion to preclude Plaintiff's expert Dr. Hua.  As set forth in the Government's opening brief, expert testimony is admissible when: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  An expert's testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  In determining expert admissibility, district courts act as gatekeepers against unreliable expert opinion.  *Id.*

Moreover, under *Daubert*, "the district court functions as the gatekeeper for expert testimony," and "[t]he court performs the same role at the summary judgment phase as at trial;

---

[6] Similarly, Plaintiff's reliance on the fact that the Federal Bureau of Investigation ("FBI") opened a homicide investigation upon the death of an apparently healthy 35-year-old man in BOP custody does not raise a triable issue of fact.  Pl. Br. at 6 (citing Laufer Decl. Ex. H). Moreover, the FBI closed that investigation in January 2020 without charges.  Declaration of Lucas Issacharoff, Ex. A.

an expert's report is not a talisman against summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). "[I]f the expert testimony is excluded as inadmissible under the framework articulated in Daubert and its progeny, the summary judgment determination is made by the district court on a record that does not contain that evidence. . . . even if precluding the expert testimony would be outcome determinative." *Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 299 (E.D.N.Y. 2014) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997)).

As previously stated, Dr. Hua acknowledges that his report, as well as his subsequent deposition testimony, failed to consider witness statements, *see* Hua Rpt. at 1; Hua Tr. 65:17-20, despite his acknowledgement that it is necessary to "always look in the context of . . . [the] case" to determine cause of death, and that witness statements are part of that context. Hua Tr. 85:19-86:3. In her opposition, Plaintiff argues that Dr. Hua "never testified that witness statements were necessary to determine cause of death," Pl. Opp. at 15, but Dr. Hua's statements make it clear that a medical examiner should, in his words "always" look in the context of the case, and that context includes witness statements. Dr. Hua nonetheless acknowledges that he failed to consider witness statements at all in connection with this matter.

Plaintiff accordingly fails to demonstrate that Dr. Hua's opinion "is based upon reliable data and methodology," as required by Fed. R. Evid. 702. *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005); *see also Gen. Elec. Co.*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). This "serious flaw [] in reasoning or methodology," warrants exclusion of Dr. Hua's testimony. *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009).

**D.    There Is No Merit to Plaintiff's Assertion that the Testimony of Dr. Gill Should be Precluded**

Plaintiff, rather than defending Dr. Hua's testimony, instead argues (without any cross-motion) that Dr. Gill's testimony should be precluded.  This argument lacks merit.  In accordance with FRE 702, Dr. Gill has the relevant specialized knowledge, his opinion is based on the relevant facts and data, his opinions are the product of reliable principles and methods, and those principles and methods were reliably applied in this case.  Plaintiff has not identified any substantive flaw in Dr. Gill's methodology or in the facts and data he relied upon.

Plaintiff relies heavily upon a single decision from an Illinois state court in *Greco v. Orthopedic & Sports Med. Clinic, P.C.*, 35 N.E.3d 1265 (Ill. App. Ct. 5th Dist. 2015), to baselessly assert that Dr. Gill "create[d] a medical narrative" in this case.  Pl. Opp. at 5.  First, in *Greco*, the appellate court merely concluded that the trial court "erred in allowing [the decedent's sister] to testify about her diagnosis because the testimony was improper hearsay and because the probative value, if any, was heavily outweighed by the potential to confuse or mislead the jury on the standard of care and causation." *Id.*  at 1274-75.  The court then noted that, "*we find that [the sister's] testimony, when considered in tandem with the testimony of Dr. Gill, the defendants' pathologist,* had great potential to mislead the jury about causation and invited them to speculate about whether the decedent's death was related to the ankle injury." *Id.* at 1276 (emphasis added).  Plaintiff misleadingly omits the italicized portion of the court's opinion, making it appear that the court concluded that *Dr. Gill's* testimony itself was incorrect or misleading.  Though concerned that information provided by Dr. Gill to the jury contributed to the prejudice created by the fact witness's testimony, the *Greco* court certainly did not conclude that Dr. Gill's medical conclusions were inaccurate, were not based on relevant data, or were otherwise unreliable.  In any event, a conclusion in a prior litigation that, to avoid

prejudice, Dr. Gill should have been precluded from testifying about certain medical evidence, provides no basis to exclude Dr. Gill's testimony in this matter.

Plaintiff next misrepresents the evidence relied upon by Dr. Gill.  First, although Dr. Gill initially did not have all of the autopsy photographs available to him, he was subsequently provided with a copy of such photographs, and his opinion is based upon the entire record.  Gill Decl. ¶¶ 1-2.  Plaintiff's assertion that Dr. Gill only reviewed "some" of the witness statements, meanwhile, is simply a misrepresentation of Dr. Gill's deposition testimony: Plaintiff's counsel asked whether Dr. Gill had reviewed "some 302's and some witness statements from the prisoners," and Dr. Gill responded, "Yes."  Laufer Decl. Ex. G 28:12-15.  Counsel's interpolation of the adjective "some," though may rule out that Dr. Gill reviewed an infinite number of witness statements, does not mean that Dr. Gill failed to review any witness statements.

Finally, Plaintiff's assertion that Dr. Gill ignored certain injuries to Mr. Grant is not only meritless, it again has no bearing on the Government's motion.  At the outset, Plaintiff mischaracterizes Dr. Gill as having described *all* of Mr. Grant's traumatic injuries as "minor," when in fact the relevant portion of his report is merely describing a subset of injuries to his scalp in a manner consistent with the official autopsy.  *See* Gov. Resp. to Pl. 56.1 Statement (Dkt. No. 97) ¶¶ 12-13.  Moreover, the Government and its expert have conceded that certain of Mr. Grant's injuries could have plausibly been attributed to neck compression *in the absence of evidence that, undisputed by Plaintiff's own expert, rules out neck compression as the cause of death*.  Specifically, the witness statements establish that Mr. Grant was not the victim of an assault or strangulation immediately prior to his collapse.  Instead, he was seen to be conversing

normally with other inmates, precluding a conclusion that the cause of death was neck compression.

### CONCLUSION

For the foregoing reasons, and the reasons set forth in the Government's opening brief, the Court should grant summary judgment in favor of the United States or, in the alternative, deem the testimony of Dr. Hua inadmissible.

Dated: New York, New York
       August 27, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney of the
Southern District of New York

By:   /s/ Lucas Issacharoff
      JENNIFER C. SIMON
      LUCAS ISSACHAROFF
      Assistant United States Attorneys
      86 Chambers Street, Third Floor
      New York, New York 10007
      Tel.: (212) 637-2746/2737