UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE MORRISON, as Administrator for the Estate of Roberto Grant, and NICOLE MORRISON, as Mother and Legal Guardian for the Property of AG and SG, Decedent's Minor Children,<br><br>　　　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>UNITED STATES OF AMERICA, *et al.,*<br><br>　　　　　　　　　　　　　Defendants. | 17 Civ. 6779 (RA)<br><br>**RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1** |

　　　　Defendant United States of America (the "Government"), by its attorney, Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submits this response in opposition to Plaintiff's Statement of Material Undisputed Facts Pursuant to Local Rule 56.1 ("Pl. 56.1 Statement"), Dkt. No. 91-1.

　　　　In responding to Plaintiff's 56.1 Statement, the Government does not concede that any of the asserted "facts" are "material" within the meaning of Local Rule 56.1. Further, many of the asserted "facts" are purported paraphrases of documents: as to those "facts," the Government's response is wholly qualified by the language of the document itself, and the Government's identification of certain inaccuracies is not a concession that no other inaccuracies exist. The Statement also contains numerous legal conclusions, argument, uncorroborated speculation, and other non-factual allegations. *See* Local Civ. R. 56.1(d).

　　　　1.　　　　Decedent Roberto Grant was formerly incarcerated in the care, custody, and control of the Defendants at the Metropolitan Correction Center in lower Manhattan on May 19, 2015. See Amended Complaint.

1

**Response to Paragraph 1:** Undisputed.[1]

2. At the time of his death, Mr. Grant's body was found within a dormitory area of the prison accessible by other prisoners. See Amended Complaint.

**Response to Paragraph 2:** Undisputed.

3. At the time of his death, Mr. Grant was 35 years of age. See Amended Complaint.

**Response to Paragraph 3:** Undisputed.

4. At the time of his death, Mr. Grant was survived by two minor daughters he fathered with Nicole Morrison. See Amended Complaint.

**Response to Paragraph 4:** Undisputed.

5. Crecita Williams is the mother of Roberto Grant. See Amended Complaint.

**Response to Paragraph 5:** Undisputed.

6. On January 10, 2017 the Office of the Chief Medical Examiner of the City of New York issued a Report of Autopsy deriving from an examination of Mr. Grant's remains on May 19, 2015. Exhibit A of Plaintiffs declaration.

**Response to Paragraph 6:** Undisputed.

7. Dr. Hammers final diagnosis stated Mr. Grant suffered from the following injuries at the time of his death: Blunt Force Trauma Of (the) Head, Neck, Torso, and Extremities, Petechial Hemorrhages of the Eyes, Periorbital Soft Tissue and Muscle, Oral Mucosa, Posterior Oropharynx, Base of Tongue, Trachea, Esophagus, and Temporalis Muscles. Blotchy Sclera Hemorrhages, Bilateral. Subcutaneous Emphysema, Eye Lids and Periorbital Tissues. Distention of Neck Veins and Temporal Vessels, Marked. Contusion, Right Lower Lip. Excoriations, Oral Mucosa of Lips.

---

[1] Undisputed statements of fact are undisputed for the purposes of this motion only. The Government reserves the right to dispute this and all other facts at trial.

Neck Muscle and Soft Tissue Hemorrhages, Multiple, Bilateral, Tracheal Ring Hemorrhage, Large. Peri-Carotid Artery Hemorrhages, Bilateral. Hemorrhage of Tongue, Left (1/2"). Subscapular Hemorrhage (3), Occipital (2" Each). Cerebral Edema, Moderate. Hemorrhage, Left Forearm Muscle (5"), Right Elbow (1/2"), Left Shoulder (4"), And Right Lateral Chest Soft Tissues (1 "). Deep Lung Parenchymal Laceration (1 "), Left Lower Lobe. Exhibit A of Plaintiffs declaration.

**Response to Paragraph 7:** Undisputed but incomplete. Under "Final Diagnoses," Dr. Hammers's report also listed: "V. Hypertensive cardiovascular disease. A. Cardiac hypertrophy (450 grams). B. Concentric left ventricular hypertrophy (1.8 cm). C. Arteriolonephrosclerosis, moderate. D. Tightly adherent renal capsules. VI. Coronary artery atherosclerosis, slight (50%), left mains coronary artery. VII. Hepatic fibrosis, uncertain cause, moderate." Laufer Dec. Ex. A at 1-2. The Government respectfully refers the Court to Dr. Hammers' report for a complete and accurate statement of its contents and requests that the Court disregard Plaintiff's incomplete characterization.

8. Dr. Hammers report reflects blunt force trauma of the head, neck, torso, and extremities as the first listed condition Mr. Grant suffered at the time of his death. Exhibit A of Plaintiffs declaration.

**Response to Paragraph 8:** Undisputed but incomplete. As noted above, Dr. Hammers's report also lists multiple other conditions. Laufer Decl. Ex. A. The Government respectfully refers the Court to Dr. Hammers' report for a complete and accurate statement of its contents and requests that the Court disregard Plaintiff's incomplete characterization.

9. Dr. Hammers report also reflects Mr. Grant suffered from Peri-Carotid Artery Hemorrhages, bilaterally at the time of his death. Exhibit A of Plaintiffs declaration.

**Response to Paragraph 9:** Undisputed but incomplete.  As noted above, Dr. Hammers's report also lists multiple other conditions.  Laufer Decl. Ex. A.  The Government respectfully refers the Court to Dr. Hammers' report for a complete and accurate statement of its contents and requests that the Court disregard Plaintiff's incomplete characterization.

10. Dr. Zhongxue Hua found that, at the time of his death, Mr. Grant " .... suffered recent, multiple, and significant, neck compression in multiple areas of his neck." Exhibit B and P of Plaintiffs declaration.

**Response to Paragraph 10:** Undisputed but incomplete.  The Government respectfully refers the Court to Dr. Hua's report for a complete and accurate statement of its contents.

11. Dr Hua further opined that Mr. Grant's " ... cause of death should be listed as inflicted and/or homicidal neck compression." Exhibit Band P of Plaintiffs declaration.

**Response to Paragraph 11:** Undisputed but incomplete.  The Government respectfully refers the Court to Dr. Hua's report for a complete and accurate statement of its contents.

12. Dr. Robert Gill, referred to the severe injuries suffered by Mr. Grant as "minor blunt force trauma" within his report. (See Exhibit C - Pg. 3 - Point 5 - Dr. Gill's report – of Plaintiffs Declaration).

**Response to Paragraph 12:** False.  Dr. Gill states that "[t]here were minor blunt injuries (hemorrhages under the scalp) of the head but none of them caused or contributed to death."  Laufer Decl. Ex. C at ¶ 5.  Plaintiff's quotation appears nowhere in Dr. Gill's report, and the implication that Dr. Gill characterized *all* of Mr. Grant's injuries—as opposed to those on his head—as "minor blunt force trauma" is false.  The Court should disregard this statement as non-factual.  The Government respectfully refers the Court to Dr. Gill's report for a complete and accurate statement

4

of its contents and requests that the Court disregard Plaintiff's incorrect and misleading characterization.

13.     Dr. Hammers report does not reflect the blunt force trauma suffered by Mr. Grant at the time of his death was minor.

**Response to Paragraph 13:** Misleading.  The implicit contrast drawn between Dr. Gill's alleged statement from paragraph 12 of Plaintiff's 56.1 Statement and Dr. Hammers's overall conclusion as to Mr. Grant's injuries is highly misleading.  As noted above, Dr. Gill in Paragraph 5 of his conclusions was characterizing Mr. Grant's subcutaneous scalp contusions as "minor." Laufer Decl. Ex. C at ¶ 5.  Dr. Hammers's report says of those same injuries: "The scalp has no contusion.  There are three discrete regions of subscalpular measuring approximately 2" x 2" each, located in the occipital region as follows: left occipital at the posterior aspect of the temporalis muscle, occipital midline, and the right occipital at the posterior aspect of the temporalis muscles. There are abundant petechial hemorrhages in the temporalis muscles, greater on the left than right. There is no skull fracture or epidural, subdural or subarachnoid hemorrhage." Laufer Decl. Ex. A at 5.  This statement is consistent with Dr. Gill's characterization of the scalp contusions.  The Government respectfully refers the Court to Dr. Hammers's report for a complete and accurate statement of its contents and requests that the Court disregard Plaintiff's misleading characterization.

14.     Dr Hammers report reflect the narrowing of Mr. Grant's left main coronary artery was slight. See Exhibit A of Plaintiffs Declaration.

**Response to Paragraph 14:** Undisputed but incomplete.  The Government respectfully refers the Court to Dr. Hammers's report for a complete and accurate statement of its contents.

15. In Greco v. Orthopedic & Sports Medicine Clinic, P.C., 2015 IL. App. (5th) 130370, the Court found that Dr. Gills testimony "…. floated about untethered, and invited nothing more than inappropriate speculation about the cause of the decedent's death." See Exhibit F of Plaintiffs Declaration.

**Response to Paragraph 15:** Undisputed but incomplete. The Court in *Greco* held that the decedent's sister should not have been allowed to testify about her medical condition, and found "*that [the sister's] testimony, when considered in tandem with the testimony of Dr. Gill, the defendants' pathologist,* had great potential to mislead the jury about causation and invited them to speculate about whether the decedent's death was related to the ankle injury." *Greco v. Orthopedic & Sports Med. Clinic, P.C.*, 35 N.E.3d 1265, 1276 (Ill. App. Ct. 5th Dist. 2015) (emphasis added). The Government respectfully refers the Court to the *Greco* court's decision for a complete and accurate statements of its contents and requests that the Court disregard Plaintiff's incomplete characterization.

16. Neither Dr. Hammers nor plaintiffs expert, Dr. Hua, presented any evidence that Mr. Grant's "slight 50%" narrowing of his left main coronary artery led to his death. See Exhibit A, B, and P.

**Response to Paragraph 16:** Undisputed but incomplete. Dr. Hammers ultimately found the cause and manner of death undetermined, but listed Mr. Grant's cardiovascular issues as one of her final diagnoses. Laufer Decl. Ex. A. The Government respectfully refers the Court to Dr. Hammers' report for a complete and accurate statement of its contents and requests that the Court disregard Plaintiff's misleading characterization. Dr. Hua, meanwhile, testified that his opinion that Mr. Grant died of neck compression was "conditional," and that he could not make a final

6

determination in without ruling out death by acute intoxication or natural causes, which he could not do.  *See* Laufer Decl. Ex. P at 129-132.

17. A handwritten note by an agent, servant, and employee of the defendant stated that Mr. Grant's injuries were "Not CPR Related", "Hyoid Bone Not Broken But Compressed & Bruised", "lots of Hemro. front & Back of Neck", "Petechiae In The Eyes/Neck/Mouth", "Consist. Of Being Choked". See Plaintiffs Declaration - Exhibit I - US_00237.

**Response to Paragraph 17:** Undisputed but unsubstantiated hearsay.  Although the note does appear in Mr. Grant's Bureau of Prison's file, Plaintiff cannot identify the author of the note or his or her source of information.  The Government respectfully requests that the Court disregard this as not constituting relevant evidence.

18. Defense witness FBOP Officer Dionysia Georgopoulos, along with Officer Michael Kearins, were on duty and posted to the housing area on the evening the decedent's death.

**Response to Paragraph 18:** Undisputed.

19. On June 18, 2015, July 21, 2015, and September 18, 2015, Officer Georgopoulos was interviewed by the FBI who were investigating Mr. Grant's murder. Exhibit J – Georgopoulos 302 statements - and Exhibit K- Georgopoulos deposition transcript-pg. 38, line 25 through pg. 40 line 3 - of Plaintiffs declaration.

**Response to Paragraph 19:** Undisputed.

20. During Officer Georgopoulos's multiple interviews with the FBI, she stated that she was told by one of the inmates in Mr. Grants dorm that he was choked to death by another inmate during a game of horseplay. Exhibit J - Georgopoulos 302 statements - and Exhibit K - Georgopoulos deposition transcript - pg. 38, line 25 through pg. 40 line 3 - of Plaintiffs declaration.

**Response to Paragraph 20:** False. Officer Georgopoulos told the FBI that an inmate had "told her about a rumor that GRANT died as a result of an accident while horsing around on the unit and that someone had choked him from behind." Laufer Decl. Ex. J at ECF 10. No inmate told Officer Georgopoulos directly that Mr. Grant was choked to death. The Government respectfully refers the Court to Officer Georgopoulos's statements for a complete and accurate statement of its contents and requests that the Court disregard Plaintiff's misleading characterization.

21. Officer Georgopoulos further testified that she felt Mr. Grant was murdered. Exhibit J - Georgopoulos 302 statements - and Exhibit K - Georgopoulos deposition transcript - pg. 38, line 25 through pg. 40 line 3 - of Plaintiffs declaration.

**Response to Paragraph 21:** Undisputed but irrelevant.

22. Plaintiff's prison conditions expert, Tim Gravette, a retired FBOP deputy warden with over 20-years-experience, regarding Officer Georgopolous's testimony, opined " ... I trust what she says to be an accurate description of what she feels happened on the night of 05/18/2015 when Roberto Grant was found unresponsive in his assigned area of the unit." (See Exhibit L pg. 4 of Plaintiffs declaration.)

**Response to Paragraph 22:** Undisputed but irrelevant. Mr. Gravette's opinion as to Officer Georgopoulos's knowledge is irrelevant, and in any event only states that he trusts "what she says to be an accurate description *of what she feels happened* . . . ." Laufer Decl. Ex. L (emphasis added).

23. Mr. Gravette found the statement of Mr. Grant's fellow inmates as contradictory and less credible than Officer Georgopoulos's description of what occurred to Mr. Grant on May 18, 2015. Exhibit O pg. 55 line 11 through pg. 56 line 6.

**Response to Paragraph 23:** Undisputed but irrelevant.

24.     Defense witnesses Captain Michael Craig Ward and Operations Lieutenant Patrick DeLaney were supervisors of Officers Georgopolous and Kearins on the night of Mr. Grants death.

**Response to Paragraph 24:** Undisputed.

25.     Both Ward and Delaney testified that patrol rounds by Correction Officers must be conducted every 30-40 minutes within housing areas. Exhibit M - pg. 33 line 18 through pg. 34, line 17 and N - pg. 44, line 22 through pg. 45, line 11 - of Plaintiffs declaration, respectively.

**Response to Paragraph 25:** Undisputed but irrelevant to the instant motion.

26.     According to Mr. Gravette, this would require correctional officers to patrol at least 16 times during an 8-hour tour. Exhibit L of Plaintiffs Declaration.

**Response to Paragraph 26:** Undisputed but irrelevant to the instant motion.

27.     Officer Georgopoulos testified that she and Officer Kearins only patrolled a few times during their tour at the time Mr. Grant was murdered. Exhibit K pg.21, line 24 through pg. 25, line 10.

**Response to Paragraph 27:** Undisputed but irrelevant to the instant motion.

28.     Mr. Gravette explicitly states with "high probability" that Roberto Grant was choked to death by another inmate and that the defendants are responsible for his death since they failed to do their required rounds with the frequency ordered by their superiors. Exhibit O - page 36 line 12 through pg. 40 line 12, pg. 41 line 6 through 10, pg. 47 line 3 through pg. 48 line 17, pg 49 line 21 through pg. 51 line 24, pg. 53 line 16, pg. 57 line 15 through pg. 59 line 17 and pg. 61 line 20 through pg. 65 line 11.

**Response to Paragraph 28:** Undisputed but irrelevant to the instant motion.  Mr. Gravette did not offer an expert opinion as to the cause of Mr. Grant's death: "As a trained and experienced

investigator and administrator in the field of corrections I to can only speculate what happened to Grant on 05/18/2015." Laufer Decl. Ex. L at 7.  And Mr. Gravette acknowledged that his opinions as to the causal connection between alleged BOP negligence and Mr. Grant's death would have to be reconsidered in the case of death by natural causes or drug overdose.  Laufer Decl. Ex. O 59:22-61:14.

29. Defendants claim that review of all witness statements were a necessity to determine cause of death, yet Dr. Gill only reviewed "some." See Exhibit G pg. 28 line 12 through pg. 29 line 11.

**Response to Paragraph 29:** False.  Plaintiff's counsel asked whether Dr. Gill had reviewed "some 302's and some witness statements from the prisoners," and Dr. Gill responded, "Yes."  Laufer Decl. Ex. G 28:12-15.  Counsel's interpolation of the adjective "some" does not mean that Dr. Gill failed to review any relevant witness statements.  The Government respectfully refers the Court to Dr. Gill's report and deposition transcript for a complete and accurate characterization of its contents and requests that the Court disregard Plaintiff's misleading characterization.

30. Dr. Hammers autopsy report does not reflect she reviewed any witness statements related to the death of Roberto Grant. See Exhibit A.

**Response to Paragraph 30:** Undisputed.

31. There were 332 autopsy photographs taken of Mr. Grant. See Exhibit B and P.

**Response to Paragraph 31:** Disputed but irrelevant.  The full set of images consists of "344 autopsy images, 2 fingerprint images, 1 I radiographs, 10 neuropathology images, 3 visual ID images, I evidence image, and 6 check-in and 6 check-out images."  Gill Decl. at 1.

32. Dr. Gill's initial report reflects he only reviewed 51 autopsy photographs. See Exhibit C.

**Response to Paragraph 32:** Undisputed but irrelevant. Dr. Gill stated that he initially reviewed 51 autopsy images and 12 radiographs. He stated that he subsequently reviewed a disk containing 344 autopsy images, as well as additional images as described above. He stated that the additional images were consistent with the autopsy report (other than a small contusion on the right lower lip) and did not cause him to change any of his opinions. Gill Decl. at 1-2.

33. At least three toxicology screenings were performed on Mr. Grants remains. All revealed negative results for synthetic cannabinoids or any illegal substances. See Exhibit A .

**Response to Paragraph 33:** Undisputed but incomplete. As Dr. Gill explained, in 2014, there were over 170 different known synthetic cannabinoids. Gill Rpt. at 3. The lab conducting the toxicology testing in this case only tested for 32 of those. *Id.*

Dated: New York, New York
       August 27, 2021

                                        Respectfully,

                                        AUDREY STRAUSS
                                        United States Attorney of the
                                        Southern District of New York

                                By:     /s/ *Lucas Issacharoff*
                                        JENNIFER C. SIMON
                                        LUCAS ISSACHAROFF
                                        Assistant United States Attorneys
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        Tel.: (212) 637-2746/2737